**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ANGEL MENDEZ; JENNIFER LYNN
GARCIA,

      *Plaintiffs-Appellees/*
      *Cross-Appellants*,

      v.

COUNTY OF LOS ANGELES; LOS
ANGELES COUNTY SHERIFF'S
DEPARTMENT,

      *Defendants*,

      and

CHRISTOPHER CONLEY, Deputy;
JENNIFER PEDERSON,

      *Defendants-Appellants/*
      *Cross-Appellees.*

Nos.  13-56686
      13-57072

D.C. No.
2:11-cv-04771-
MWF-PJW

OPINION

On Remand From The United States Supreme Court

Argued and Submitted May 14, 2018
Seattle, Washington

Filed July 27, 2018

Before:  Ronald M. Gould and Marsha S. Berzon, Circuit
Judges, and George Caram Steeh III,[*] District Judge.

Opinion by Judge Gould

---

## SUMMARY[**]

---

### Civil Rights

On remand from the United States Supreme Court, the
panel affirmed in part and reversed in part the district court's
judgment in an action brought pursuant to 42 U.S.C. § 1983
and state law alleging that sheriff's deputies violated
plaintiffs' Fourth Amendment rights when during their
search for a parolee-at-large, the deputies unlawfully entered
plaintiffs' residence and shot them multiple times.

Plaintiffs, Angel Mendez and Jennifer Lynn Garcia, were
sleeping in a small one-room shed located in the backyard of
the main house when defendants entered the shed, without a

---

[*] The Honorable George Caram Steeh III, United States District
Judge for the Eastern District of Michigan, sitting by designation.

[**] This summary constitutes no part of the opinion of the court.  It
has been prepared by court staff for the convenience of the reader.

warrant or knocking and announcing their presence. Mendez, roused from his sleep, picked up a BB gun in order to move it off the futon where he was sleeping, and the officers, believing they were threatened, opened fire, severely injuring plaintiffs.

The panel held, as it did in its earlier opinion *Mendez v. County of Los Angeles*, 815 F.3d 1178, 1191 (9th Cir. 2016), that the officers violated the Fourth Amendment by entering plaintiffs' home without a warrant, consent or exigent circumstances. The panel held that the officers' unlawful entry, as distinct from the unlawful mode of entry, that is, the failure to knock and announce, for which the officers had qualified immunity, was the proximate cause of plaintiffs' injuries. Moreover, the panel held that even if it were to treat the failure to get a warrant rather than the entry as the basis for the breach of duty, as the defendants suggested, the panel would still reach the same conclusion regarding proximate cause. The panel rejected defendants' assertion that Mendez's action of moving the gun so that it was pointed in their direction was a superseding cause of plaintiffs' injuries. The panel held that if an officer has a duty not to enter in part because he or she might misperceive a victim's innocent acts as a threat and respond with deadly force, then the victim's innocent acts cannot be a superseding cause.

Addressing plaintiffs' California negligence claim, the panel held that pursuant to the California Supreme Court's decision in *Hayes v. County of San Diego*, 57 Cal. 4th 622, 639 (2013), judgment should be entered in plaintiffs' favor. The panel concluded that on remand, the judgment shall be amended to award all damages arising from the shooting in the plaintiffs' favor as proximately caused by the unconstitutional entry, and proximately caused by the failure to get a warrant. The panel directed that judgment shall also

be entered in the plaintiffs' favor on the California negligence claim for the same damages arising out of the shooting.

## COUNSEL

Melinda Cantrall (argued) and Thomas C. Hurrell, Hurrell Cantrall LLP, Los Angeles, California, for Defendants-Appellants/Cross-Appellees.

Leonard J. Feldman (argued), Peterson Wampold Rosato Luna Knopp, Seattle, Washington, for Plaintiff-Appellees/Cross-Appellants.

Adrienna Wong, Staff Attorney; Peter Bibring, Director of Police Practices; ACLU of Southern California, Los Angeles, California, for Amicus Curiae ACLU of Southern California.

## OPINION

GOULD, Circuit Judge:

On remand from the United States Supreme Court we are tasked with deciding whether the unlawful entry into a residence by two sheriff's deputies, without a warrant, consent, or exigent circumstances, was the proximate cause of the subsequent shooting and injuries to the plaintiffs. We hold that it was, permitting a federal claim under 42 U.S.C. § 1983. We also hold that the plaintiffs have an independent basis for recovery under California negligence law.

Angel Mendez was shot approximately ten times and suffered severe injuries. He lost much of his leg below the knee, and he faces substantial ongoing medical expenses. Jennifer Lynn Garcia (now Jennifer Mendez) was shot in the upper back and left hand. On the afternoon of the shooting, both were sleeping in their modest home, a small one room structure on the property of Paula Hughes. Two Los Angeles County Sherriff's deputies, Conley and Pederson, unlawfully entered the structure. In doing so, they roused the sleeping Mr. Mendez. In rising from the futon on which he had slept, Mr. Mendez picked up a BB gun that was on the futon to place it on the floor. In the process, the gun was pointed in the general direction of Conley and Pederson. The deputies, believing that the BB gun threatened them, quickly opened fire.

Before the shooting, deputies of the Los Angeles Sheriff's Department were searching for a parolee-at-large, Ronnie O'Dell. A confidential informant had seen someone resembling O'Dell riding a bicycle in front of Paula Hughes' home. After a briefing during which officers were told that a couple resided in a shack behind Hughes' home, officers were dispatched to the scene and entered Hughes' house. Officers Conley and Pederson, who were among the officers informed about the couple living in the backyard of the Hughes property, were charged with searching the area to the rear of the house. Conley and Pederson, guns drawn and on alert because they believed O'Dell to be armed and dangerous, approached the structure in which the Mendezes resided. There were many apparent signs that the structure was a residence, including: an electrical cord was running to it; an air conditioner was installed; and some storage lockers were nearby. Conley and Pederson nevertheless entered the structure without announcing their presence, and a split

second later, misperceiving the threat posed by the BB gun, shot the Mendezes, which caused their grave injuries.

The Mendezes brought claims against the officers under 42 U.S.C. § 1983 for violations of the Fourth Amendment. They argued that the officers unlawfully entered the shack, that the officers' mode of entry was unreasonable because they did not knock and announce their presence, and that the officers used excessive force when they opened fire. The Mendezes also brought claims for negligence under California law.

The district court ruled in favor of the plaintiffs on all three claims under § 1983, granting nominal damages for the unlawful entry and failure to knock and announce, and roughly four million dollars on the excessive force claim. In addressing the excessive force claim, the district court found that the officers' use of force at the time of the shooting was reasonable, but under our circuit's former provocation doctrine, the officers were still liable for excessive use of force, because the unlawful entry and the failure to knock and announce provoked the circumstances giving rise to the subsequent shooting.

The district court refused to grant recovery under California negligence law, based on its conclusion that Conley and Pederson acted reasonably at the moment of the shooting. The court believed that under then-current California law, the relevant inquiry concerned the moment of the shooting, not the totality of the circumstances surrounding the shooting, including pre-shooting conduct. *Mendez v. County of Los Angeles*, No. CV 11-04771-MWF, 2013 U.S. Dist. LEXIS 115099, at \*92–93 (C.D. Cal. Aug. 13, 2013). If one were to consider the totality of the circumstances, the district court determined, Conley and

Pederson's conduct was "reckless as a matter of tort law," and so negligent. *Id.* at *97.

In issuing its ruling, the district court was aware of a then-pending California Supreme Court decision, *Hayes v. County of San Diego*, that might bear on this analysis, and stated that if *Hayes* altered the analysis, it would alter its judgment on its own motion. *Hayes* held that "tactical conduct and decisions preceding the use of deadly force are relevant considerations under California law in determining whether the use of deadly force gives rise to negligence liability." *Hayes v. County of San Diego*, 57 Cal. 4th 622, 639 (2013). The district court, however, declined to modify its judgment after *Hayes* was decided.

The officers appealed the district court's § 1983 ruling, and the Mendezes cross-appealed its California law ruling. We affirmed in part and reversed in part. On the unlawful entry claim, we held that the officers violated the Fourth Amendment by entering the residence; the officers had no warrant, lacked consent to enter, and the circumstances did not satisfy any of several emergency or exigency exceptions to the Fourth Amendment prohibition on unreasonable searches and seizures. The officers could not benefit from qualified immunity, because at the time of the incident, case law had clearly established that the officers' entry was unlawful. *Mendez v. County of Los Angeles*, 815 F.3d 1178, 1191 (9th Cir. 2016). We also held that the shooting was a foreseeable consequence of the unlawful entry, and that the district court should have awarded full damages on the

unlawful entry claim under basic principles of proximate cause.[1]  *Id.* at 1195.

On the knock and announce claim, however, we held that though the officers had a constitutional duty to knock and announce before entering, this duty had not been clearly established with regard to the specific facts of this case.  As such, the officers were entitled to qualified immunity on this claim, and we vacated the district court's award of nominal damages on it. *Id*. at 1191.

Finally, on the excessive force claim, we upheld the district court's decision based on our circuit's prior provocation rule.  We held that the officers' unlawful entry was reckless, at a minimum.  *Id.* at 1194.  And under the provocation doctrine as established then in our precedent, where an officer intentionally or recklessly provokes a violent confrontation, and that provocation is itself an independent Fourth Amendment violation, the officer was then liable for a defensive use of force.  *Id.* at 1193.  We did not address the state law negligence claim.

The United States Supreme Court vacated our prior decision and remanded this case to us for further consideration. *County of Los Angeles v. Mendez*, 137 S. Ct. 1539 (2017).  The Court disagreed with and reversed two parts of our ruling.  First, the Court held that the Ninth Circuit's provocation doctrine was "incompatible with [the Court's] excessive force jurisprudence" because it "uses another constitutional violation to manufacture an excessive

---

[1] We held that damages should be awarded jointly against both Pederson—who did not enter the shack—and Conley—who did.  A person who is an integral participant in an unlawful search is jointly liable, even if the person does not enter the residence. *Mendez*, 815 F.3d at 1195.  This conclusion still holds.

force claim where one would not otherwise exist." *Id.* at 1546. However, the Court noted that "plaintiffs can— subject to qualified immunity—generally recover damages that are proximately caused by any Fourth Amendment violation." *Id.* at 1548. And the Court noted that the Mendezes could, in principle, still recover for "injuries proximately caused *by the warrantless entry*." *Id.* at 1548 (emphasis in original). But, in assessing our proximate cause analysis, the Court held that we did not adequately separate the proximate cause analysis for the unlawful entry—on which the officers did not benefit from qualified immunity—from the proximate cause analysis for the failure to knock and announce—on which they did. *Id*. at 1549.

On remand we must address whether the officers' unlawful entry, as distinct from the unlawful *mode* of entry—that is, the failure to knock and announce—was the proximate cause of the Mendezes injuries. We hold that it was. We also address the still remaining state law negligence claims, and hold that California negligence law provides an independent basis for recovery of all damages awarded by the district court.

# I

In our prior ruling we held that the officers engaged in a search by entering the Mendezes' home. *Mendez*, 815 F.3d at 1187. The officers did not have a warrant or consent and did not satisfy any emergency or exigency conditions that could make an entry lawful. *Id.* at 1187–91. The law on all these points was clearly established at the time, so the officers could not obtain qualified immunity for their unlawful search. *Id*. at 1191. There is no reason to revisit those conclusions on remand: We again hold that the officers violated the Fourth Amendment by engaging in an unconstitutional entry into the Mendezes' home.

A § 1983 claim creates a species of tort liability, with damages determined "according to principles derived from the common law of torts." *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 306 (1986). Such damages are measured in terms of "compensation for the injury caused to plaintiff by defendant's breach of duty." *Id.* Under this analysis, we must first determine what act or omission constituted the breach of duty, and then ask whether that act or omission was the but-for and proximate cause of the plaintiff's injuries.

The parties dispute which act or omission constituted the breach of duty. The officers argue that the failure to get a warrant before entering was the omission constituting the breach. Framed in that way, the officers argue, the breach of duty did not cause the Mendezes injuries because, had the officers first gotten a warrant, the same sort of confrontation and shooting still could have occurred.

By contrast, the plaintiffs argue that the entry into the shed was the act constituting the breach of duty. On this framing of the issue, the officers' breach of duty was the cause in fact of the Mendezes' injuries because, had the officers not entered, the Mendezes would not have been injured. For the reasons explicated below, we hold that on either framing of the issue the officers' unlawful behavior was a proximate cause of the Mendezes' injuries. But, as we explain first, the plaintiffs' framing of this issue is the correct one. The officers' framing of the issue conflates one of several acts that would have discharged their duties under the Fourth Amendment—getting a warrant—with an act performed in violation of that duty—entering the residence. Or, to put it another way, the officers' argument misconstrues the duty not to enter a home without a warrant as a duty simply to get a warrant—overlooking the fact that

absent a warrant, consent, or exigent circumstances, there is a duty *not* to enter.

To see why the plaintiffs' account of the nature of the officers' duty is correct, we need look no further than the text of the Fourth Amendment. The Fourth Amendment reads as follows:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

By its plain text the Fourth Amendment does two things. First, the Fourth Amendment prohibits unreasonable searches and seizures. *See United States v. Jones*, 565 U.S. 400, 404 (2012) (noting that a physical intrusion into a property is a search under the Fourth Amendment). Second, the Fourth Amendment specifies the conditions under which a warrant can be issued.

The Fourth Amendment protects not only a person's broad interests in privacy, but also, and specifically, a person's interest in being shielded from physical governmental intrusions. *See Jones*, 565 U.S. at 406 ("[F]or most of our history the Fourth Amendment was understood to embody a particular concern for government trespass upon the areas ('persons, houses, papers, and effects') it enumerates."); *Florida v. Jardines*, 569 U.S. 1, 5 (2013) (noting that in addition to privacy interests, the Fourth Amendment protects citizens interests in being free from physical intrusions).

The Fourth Amendment is often referred to as imposing a "warrant requirement." *See Patel v. City of Los Angeles*, 738 F.3d 1058, 1071 (9th Cir. 2013). This way of stating things is not entirely inaccurate, but it can be misleading. The Fourth Amendment does not require officers to get warrants. Rather, it requires that officers not conduct "unreasonable searches and seizures." The role of the Warrant Clause of the Fourth Amendment is simply to specify one set of conditions under which an entry into a residence can be reasonable—that is, where the officers have a warrant that satisfies the conditions articulated in the Warrant Clause. That is not, however, the only way that an entry can be reasonable. Officers can also enter with consent, or under certain emergency or exigent circumstances. *See Michigan v. Clifford*, 464 U.S. 287, 293 (1984) ("[A]ny official entry must be made pursuant to a warrant in the absence of consent or exigent circumstances."). An entry into a residence that is not under a warrant, that lacks consent, and that is not justified by exigent circumstances or an emergency is unreasonable. *Id.* Under such circumstances, the Fourth Amendment imposes a duty on officers not to enter. And it is entry itself that constitutes the breach of that duty.

Similarly, an officer who wants to enter a property can do so not only with a warrant but also with consent. But it would be a mistake to conclude that an officer has a freestanding duty to get consent. In normal circumstances, if an officer does not have a warrant or consent or exigent circumstances, the officer must not enter. Consent, much like a warrant, changes an officer's duties. It turns an unlawful act into one that is lawful. But lawful entry remains the key duty. For that reason, Justice Jackson explained in *McDonald v. United States*: "Had the police been admitted as guests of another tenant . . . they would have been legally

in the hallways. Like any other stranger they could then spy or eavesdrop on others without being trespassers . . . . [but by unlawfully entering through a window] they were guilty of breaking and entering—a felony in law and a crime far more serious than the one they were engaged in suppressing." 335 U.S. 451, 458 (1948) (Jackson, J., concurring).

That such duties between parties can change based on the surrounding circumstances is a commonplace feature of law. In tort law, for example, an act or omission can be a breach of duty in one context, but not a breach of duty in another, even if the act or omission itself has the exact same propensity to cause harm. For example, when a person operates a business and invites customers onto the property, the business proprietor owes a duty to those customers to make the premises safe. The business proprietor does not owe a similar duty to a trespasser. *Compare* Restatement (Second) of Torts § 333 (Am. Law Inst. 1981) (trespassers), *with id*. § 343 (invitees). So, if a property owner negligently leaves a hazard on the property, the owner can be liable to the invitee, but not liable to the trespasser. The same act and resulting injury is the basis for liability in one case, but not in the other. The difference is only the presence or absence of a duty owed to another, which makes the act tortious or not. Similarly, a warrant functions to change what duties an officer owes to a civilian. In a case where the officers procure a valid warrant, their defense relates not to causation, but to the fact that because they had a warrant their entry was privileged and so not a breach of any duty owed to the plaintiffs.

In summary, for the purposes of § 1983, a properly issued warrant makes an officer's otherwise unreasonable entry non-tortious—that is, not a trespass. Absent a warrant

or consent or exigent circumstances, an officer must not enter; it is the entry that constitutes the breach of duty under the Fourth Amendment. As a result, the relevant counterfactual for the causation analysis is not what would have happened had the officers procured a warrant, but rather, what would have happened had the officers not unlawfully entered the residence.

## II

In light of the foregoing analysis, we next determine whether the unlawful entry was the cause in fact and the proximate cause of the Mendezes' injuries. *See White v. Roper*, 901 F.2d 1501, 1505 (9th Cir. 1990). Here, as the district court correctly found, there is no question that the unlawful entry was the cause in fact of the injuries. If the officers had not entered, Mr. and Ms. Mendez would not have been shot while lying in bed. That is the quick end of analysis of cause in fact.

Turning to the more difficult question of proximate cause, we hold that the officer's unlawful entry proximately caused the Mendezes' injuries. The proximate cause question asks whether the unlawful conduct is closely enough tied to the injury that it makes sense to hold the defendant legally responsible for the injury. W. Page Keeton et al., *Prosser and Keeton on Torts* § 42 (5th ed. 1984). Proximate cause is "said to depend on whether the conduct has been so significant and important a cause that the defendant should be legally responsible." *Id.* It is a question of "whether the duty includes protection against such consequences." *Id.* We have held that "the touchstone of proximate cause in a § 1983 action is foreseeability." *Phillips v. Hust*, 477 F.3d 1070, 1077 (9th Cir. 2007), *vacated on other grounds*, 555 U.S. 1150 (2009). The Supreme Court has observed that "[p]roximate cause is often

explicated in terms of foreseeability or the scope of the risk created by the predicate conduct." *Paroline v. United States*, 134 S. Ct. 1710, 1719 (2014). "A requirement of proximate cause thus serves, *inter alia*, to preclude liability in situations where the causal link between conduct and result is so attenuated that the consequence is more aptly described as mere fortuity." *Id.*

Whether understood in terms of the scope of the risk or in terms of foreseeability, the findings of the district court make clear that the officers' entry into the structure was here the proximate cause of the Mendezes' injuries. This is not a case where one can say that the injury to the Mendezes was a mere fortuity. The injury followed in a normal course as a result of the unlawful acts of the officers.

First, as a general matter, the risk of injury posed by the entry of an armed stranger into a residence is one of the reasons the Fourth Amendment prohibits entry except under defined specific conditions. There is historical evidence suggesting that the point of the Fourth Amendment's prohibition against trespass into homes was in part to prevent damage done by the trespassers.

For instance, attendees at the Boston Town Meeting of 1772 raised concerns about damage done to chattels after searches. *See* Maureen E. Brady, *The Lost "Effects" of the Fourth Amendment: Giving Personal Property Due Protection*, 125 Yale L.J. 946, 991 (2016). And anti-federalists advocated for constitutional protections against searches because otherwise the government could be free to damage personal property when searching. *Id.* These historical sources suggest that the Fourth Amendment was ratified not just to protect privacy interests, but also out of a concern that governmental trespass to property could lead to subsequent physical harms. In modern times, the same

concern was voiced in Justice Jackson's concurrence in *McDonald*. Justice Jackson was concerned that unlawful entries can invite precisely the sort of violence that occurred here, where "an officer seeing a gun being drawn on him might shoot first." *McDonald*, 335 U.S. at 460–61.

We are not alone in recognizing that an armed officer's high-alert entry can foreseeably lead the officer to use deadly force in response to a misapprehended threat. For instance, in *Attocknie v. Smith*, a police officer unlawfully entered a house and shot the son of a person the officer hoped to apprehend. 798 F.3d 1252, 1255 (10th Cir. 2015). There, like here, the shooting happened only moments after the entry. *Id.* at 1254. The Tenth Circuit held that "a reasonable jury could determine that the unlawful entry was the proximate cause of the fatal shooting of [the victim]." *Id*. at 1258.

Looking to other cases involving unlawful entry—including burglary—can be instructive in assessing the proximate cause question. As evidenced by Justice Jackson's concurrence in *McDonald*, analogizing the acts of officers who unlawfully enter to those of burglars is apt. 335 U.S. at 458. More recently, the Supreme Court has noted that "[b]urglary is dangerous because it can end in confrontation leading to violence." *Sykes v. United States*, 564 U.S. 1, 9 (2011), *overruled on other grounds by Johnson v. United States*, 135 S. Ct. 2551 (2015). And it has also noted that burglary foreseeably creates the "possibility of a face-to-face confrontation between the burglar and a third party—whether an occupant, a police officer, or a bystander." *James v. United States*, 550 U.S. 192, 203 (2007), *overruled on other grounds by Johnson v. United States*, 135 S. Ct. 2551 (2015). Stated another way, unlawful entry invites violence.

Looking to the factual findings of the district court that bear on the proximate cause analysis only reinforces the conclusion that the entry was the proximate cause of the Mendezes' injuries.  Here, the district court found that the officers entered with weapons drawn.  *Mendez*, 2013 U.S. Dist. LEXIS 115099, at \*11.  The officers were aware, or should have been aware that the Mendezes were residing in the building in Hughes' backyard.  *Id.* at \*34–35.  The officers were on alert, believing themselves to be searching for an armed individual.  *Id.* at \*11.  And as the district court correctly observed, in light of the protections afforded by the Second Amendment, which are at their height where defense of one's home is at stake, *see District of Columbia v. Heller*, 554 U.S. 570, 628–29 (2008), it can be expected that some individuals will keep firearms in their homes to defend themselves against intruders.  *Id.* at \*87–88.  Under these conditions, armed officers entering a house will necessarily present a substantial risk to anyone in the house they perceive as being armed.  It is all the more important that officers in such cases abide by their duties under the Fourth Amendment.

Important social interests are served by minimizing interactions between armed police officers on high alert and innocent persons in their homes, precisely because such interactions can foreseeably lead to tragic incidents where innocent people are injured or killed due to a split-second misunderstanding.  One way the Constitution serves these interests is by adopting a rule that restricts officer entry into a residence except in certain limited circumstances.  And it is obviously foreseeable that fewer tragic incidents like this one would occur under an enforced regime where officers will not enter homes without sufficient justification, as compared to one where officers enter without adequate justification.  Especially where officers are armed and on

alert, violent confrontations *are* foreseeable consequences of unlawful entries.

The officers here suggest that any threat could be diffused by requiring officers to knock and announce, and hence, they argue that only the failure to knock and announce—on which the officers have qualified immunity—and not the entry itself was the proximate cause of the Mendezes' injuries. This argument is fallacious. First, the injuries would have been equally avoided had the officers not entered unlawfully without warrant or consent or exigent circumstances. And had officers knocked and announced, they still could not have lawfully entered absent consent or exigent circumstances or a warrant. The officers' argument ignores the fact that "it is common for injuries to have multiple proximate causes." *Staub v. Proctor Hosp.*, 562 U.S. 411, 420 (2011). Here, both the entry and the failure to knock and announce were proximate causes of the Mendezes' injuries. Officers cannot properly escape liability when they breach two duties, each breach being necessary for the harm to occur, just because one of the duties was subject to qualified immunity. That would lead to the absurd result that an officer who breaches only one duty is liable, but that an officer who breaches multiple duties is not.

Consider a scenario like the one in this case, but where Mr. Mendez is deaf. Suppose that officers do knock and announce, but failing to catch Mr. Mendez's attention, proceed to unlawfully enter. In such a case, where a deaf Mr. Mendez responded the same way as here, unaware that the people entering were law enforcement officers, the officers would still be liable as having violated Mr. Mendez's Fourth Amendment rights in a way that proximately caused his physical injuries. To shield from

liability an officer who additionally breached the knock and announce requirement would be manifestly unjust.

Further, the officers' legal position in the earlier appeal was that they had no duty to knock and announce before entering the inhabited shed, as they had done so at the door of the main house. We rejected that position, but agreed that there was no clearly established law requiring a second knock and announce at the doorway of a second occupied building on the same property. *Mendez*, 815 F.3d at 1192–93. On the officers' view of the law, they had *no* knock and announce duty. But they still had a duty not to enter unlawfully, and that breach of duty could have foreseeably led to the injury that occurred. This conclusion should not change because we rejected the officers' legal position on the knock and announce requirement, yet held that they were justified in holding it because the governing law at the time of the incident was not clearly established.

Second, even if an officer knocks and announces his or her presence, or seeks consent to enter, a homeowner may reasonably still wish that the officer not enter, especially in circumstances like this, where the officer has a weapon drawn and is on alert. The reason why is obvious. An innocent homeowner reasonably may believe that allowing an agitated officer to enter the residence will substantially increase the risk that a person, pet, or property inside might be harmed. Police officers rightly remind the public that they are required to make split-second decisions in very difficult situations. *See Tennessee v. Garner*, 471 U.S. 1, 19 (1985). These split-second decisions cannot in every case be made reliably so as to avoid harm to innocents. But these imperfect life-or-death decisions demonstrate that entry by an officer, on alert, with weapon drawn, can foreseeably result in shooting injuries where the officer mistakes an

innocent implement for a weapon. Entry poses a foreseeable and severe risk only partly mitigated by knocking and announcing. Under circumstances like those presented here, the safe course for the public and the one prescribed by the Fourth Amendment, is for officers to remain outside, unless or until they have a warrant or consent or exigent circumstances arise.

## III

Even if we were to accept the officers' framing of the issue and treat the failure to get a warrant rather than the entry as the basis of the breach of duty, we would reach the same conclusion regarding proximate cause. To procure a warrant an officer must have probable cause. The probable cause requirement erects a barrier against police intrusions and the associated risk of harm, except where the intrusions are adequately justified. The requirement thus represents the balance we have struck as a society in defining when it is permissible for an officer to impose a risk of harm on innocent members of the public in service of the competing social need to have effective law enforcement. But where probable cause is lacking, imposing that risk cannot be justified.

Here, the officers most likely lacked probable cause to believe that O'Dell was in a shed that was known, or reasonably should have been known, to belong to the Mendezes. As we noted in our prior decision in this case, "O'Dell was supposedly spotted riding a bicycle in front of Hughes' house. Unless he was riding in circles, he would have passed the house long before the officers arrived. The original group of officers recognized this, as some of them went to another house to look for O'Dell." *Mendez*, 815 F.3d at 1188 n.5. Under the circumstances the officers had no more reason to believe that O'Dell was on Hughes' property

than that he was on any other property reachable by bike within the time between the informant's report and the arrival of the police.[2] And although the officers came across a bike parked in front Hughes' home, there was nothing to suggest that the bike was or resembled the bike O'Dell was riding. Seeing a bike after a suspect was seen riding a bike provides no more probable cause than seeing a car after a suspect was seen driving a car. Further attenuating probable cause is that the only reason given for believing O'Dell was in the Mendezes' residence is that he was not in the main house, and the officers thought they heard someone running in that house.

Moreover, even if a magistrate could have properly concluded that there was probable cause that O'Dell could be located in the Mendezes' residence—which we doubt—requiring officers to get a warrant before entry serves important interests. Consider the steps in the process of gaining a warrant. Officers must first gather information that satisfies the conditions set forth in the Warrant Clause of the Fourth Amendment. That process invites officers to ask whether they have sufficient justification for entering a property. Then the officers must seek out an impartial magistrate who will assess whether the officer's proffered justifications are adequate. Taken together, these two processes play an important protective role. Among other things, they require officers carefully to consider whether they are justified in imposing a known risk on third parties

---

[2] Sergeant Minster—who led the operation—stated that the informant said that he had seen someone resembling O'Dell leaving the Hughes residence by bike. There is some reason to believe that this was not O'Dell at all. And even if it was, under those circumstances, it is actually less likely that O'Dell was in Hughes' house than that he was in some other randomly selected house in the area. The officers had no reason to believe that O'Dell would return to a house he had just left.

who might be inside the residence.  They also force officers to reflect on the circumstances facing them.  This slower and more deliberative process helps secure the rights and interests of civilians to be free from unnecessary harms to their property and their person.  When a judicial officer is interposed between the police and civilians, "potentially fatal decisions[s] . . . [are] taken away from those on the scene, whose judgment may be clouded by an understandable, but perhaps misguided sense of urgency." *Alexander v. City & County of San Francisco*, 29 F.3d 1355, 1368–69 (9th Cir. 1994) (Kozinski, J., concurring); *see also Steagald v. United States*, 451 U.S. 204, 212 (1981).  Here, "[b]y failing to take this constitutionally-required step, the officers short-circuited the built-in safeguard of the warrant requirement." *Alexander*, 29 F.3d at 1368–69.

The importance of this slower and more deliberative process is on display here.  We concluded previously that there were no exigent circumstances here justifying an immediate entry. *Mendez*, 815 F.3d at 1189–90.  It is likely that if the officers had gone through the constitutionally required warrant procedures before entering, they would have remembered that the Mendezes' lived in the building behind the Hughes' house, and taken account of the risks of armed entry into an inhabited building.   In such circumstances a responsible officer would likely have taken additional steps to prevent avoidable injuries to innocent third parties.  The process of having to collect information, seek permission for entry from a magistrate, and justify that entry, most clearly serves important social interests where a warrant request is denied because it creates a barrier protecting persons from unnecessary harm at the hands of police.  But this process also protects individuals even when the warrant is granted, because it serves an important purpose of encouraging considered reflection before officers

take action. Here, the failure to engage in this deliberative process foreseeably led to the Mendezes' injuries.

## IV

The officers also argue that their entry was not the proximate cause of the Mendezes' injuries because Mr. Mendez's action of moving the gun so that it was pointed in the direction of the officers was a superseding cause of the injuries. We disagree. To be sure, officers are free from liability if they can show that the behavior of a shooting victim was a superseding cause of the injury. A superseding or intervening cause involves a shifting of responsibility away from a party who would otherwise have been responsible for the harm that occurs. Keeton et al., *supra*, § 44. If a resident sees that an officer has entered and intentionally tries to harm the officer, who in turn draws his weapon and shoots, the resident's intentional action would be a superseding cause of the injury. *See, e.g.*, *Bodine v. Warwick*, 72 F.3d 393, 400 (3d Cir. 1995) (noting that if a suspect were to shoot at persons known to be officers, the suspect's act would be a superseding cause absolving the officers of liability for harm caused as a result of an unlawful entry).

However, the hypothetical situation imagined in *Bodine* has no purchase here. The district court found that Mr. Mendez was napping on a futon with a BB gun by his side when the officers entered. *Mendez*, 2013 U.S. Dist. LEXIS 115099 at *13. Moments after the officers entered, Mr. Mendez moved the BB gun. *Id.* at *14. Almost immediately the officers began to fire upon the Mendezes. *Id.* at *15. Mr. Mendez had no idea that the persons entering his home were police officers, making this situation wholly unlike the hypothetical posed in *Bodine*. And Mr. Mendez did not

deliberately aim at the intruding officers; he was moving the gun, seemingly so he could rise.

Under basic tort principles, something is a superseding cause only if it is "a later cause of independent origin that was not foreseeable." *Exxon Co. v. Sofec*, 517 U.S. 830, 837 (1996). A victim's behavior is not a superseding cause where the tortfeasor's actions are unlawful precisely because the victim foreseeably and innocently might act that way. *See* Restatement (Second) of Torts § 449 (Am. Law Inst. 1981) (noting that subsequent events that explain why the act was negligent are not superseding causes); *Farr v. N.C. Mach. Co.*, 186 F.3d 1165, 1170 (9th Cir. 1999) (noting that where "the risk that materialized was the one threatened by the [tortious act]," acts of the victim are not superseding causes). So if an officer has a duty not to enter in part because he or she might misperceive a victim's innocent acts as a threat and respond with deadly force, then the victim's innocent acts cannot be a superseding cause.

As explained above, among the reasons why the Fourth Amendment erects a barrier to entry is that an officer might, due to a mistaken assessment of a threat, harm a person inside the residence. Persons residing in a home may innocently hold kitchen knives, cell phones, toy guns, or even real ones that could be mistakenly believed by police to pose a threat. The possibility of misperceiving a threat is among the reasons why entry into a home by armed police officers with weapons drawn is dangerous. In such cases, the innocent acts of a homeowner in moving an ordinary item in an ordinary way cannot properly be viewed as a superseding cause.

Moreover, under basic tort principles, foreseeability is looked at retrospectively when assessing whether an intervening event is a superseding cause. And an event will

be a superseding cause only if it is extraordinary in retrospect. *See* Restatement (Second) of Torts § 443 cmts. b, c (Am. Law Inst. 1981) (noting that only an act that is abnormal or extraordinary in retrospect serves as a superseding cause). Here, there is nothing extraordinary about the possibility that officers might mistake an innocent implement for a threat. Nationally prominent events in publicized police shootings show that such a possibility is sadly all too common.

Nothing about Mr. Mendez's innocent actions warrants shifting responsibility for the subsequent shooting injuries away from the officers and to the injured victim. And this is precisely what the district court correctly held. "Mr. Mendez's 'normal efforts' in picking up the BB gun rifle to sit up on the futon do not supersede Deputies Conley and Pederson's responsibility." *Mendez*, 2013 U.S. Dist. LEXIS 115099 at *87.

## V

We next turn to the plaintiffs' California negligence claim. We did not address this claim in our prior ruling, nor did the Supreme Court address the California law claim in its decision. We now resolve the Mendezes' cross-appeal and hold that under the California Supreme Court's decision in *Hayes v. County of San Diego*, judgment should be entered in the Mendezes' favor on the California negligence law claim. The district court did not grant relief under California negligence law because the court believed that under then existing California law, negligence is assessed based only on the state of affairs at the moment of the shooting, and not in light of pre-shooting conduct. *Mendez*, 2013 U.S. Dist. LEXIS 115099 at *93. But after the district court entered judgment the California Supreme Court clarified that "law enforcement personnel's tactical conduct

and decisions preceding the use of deadly force are relevant considerations under California law in determining whether the use of deadly force gives rise to negligence liability." *Hayes*, 57 Cal. 4th at 639.[3]

Here, the district court's findings compel the conclusion that the officers were negligent under California law. The district court specifically found that the "totality of Deputies Conley and Pederson's conduct was reckless as a matter of tort law," and that "the conduct rose beyond even gross negligence." *Mendez*, 2013 U.S. Dist. LEXIS 115099, at *97, *82; *see also Mendez*, 815 F.3d at 1194 ("the record here bears out Conley and Pederson's recklessness"). It is beyond negligent for officers to enter a dwelling with guns drawn and without announcing their presence, especially when they are on notice that the dwelling is occupied by a third party, unless there are special circumstances that might justify such action. No such special circumstances were present in this case, and it is foreseeable that such reckless behavior can lead to tragic accidents like the one that occurred here.

---

[3] The district court had told the parties that it would revisit its judgment in light of *Hayes*, which was pending at the time. The plaintiffs asked the court to do so, but the court refused on procedural grounds because the Mendezes filed a document styled as a "request" rather than styled as a motion. We review a district court's procedural determinations regarding local rules for abuse of discretion. *Kalitta Air L.L.C. v. Cent. Tex. Airborne Sys. Inc.*, 741 F.3d 955, 957 (9th Cir. 2013). Here the district court told the parties that it would revisit its judgment on its own motion if appropriate in light of *Hayes*. In light of this representation to the parties, and the obvious relevance of *Hayes*, the district court should have addressed the issue on its own without prompting by the plaintiffs. To then dismiss the plaintiff's request on procedural grounds was an abuse of discretion, because the plaintiffs were reasonably relying on the district court's representation.

We note that the officers' failure to knock and announce is an especially dangerous omission.  Under California law, the officers here are not entitled to qualified immunity for that lapse.  *Venegas v. County of Los Angeles*, 63 Cal. Rptr. 3d 741, 755 (Ct. App. 2007); *Robinson v. Solano County*, 278 F.3d 1007, 1016 (9th Cir. 2002).  Under California law, unlike under 42 U.S.C. § 1983, the failure to knock and announce can be a basis of liability.  The officers knew or should have known about the Mendezes' presence.  Yet they decided to proceed without taking even simple and available precautions, including announcing their presence, which could have protected the Mendezes from the severe harm that befell them.

The officers argue that we earlier held that they behaved reasonably in failing to knock and announce.  We did not. We held that under federal law applicable to the § 1983 claim, the officers had qualified immunity because it was not clearly established at the time that, under the circumstances, the failure to knock and announce was a federal constitutional violation.  *Mendez*, *815* F.3d at 1192.  Under the evolving precedent of qualified immunity, officers can receive qualified immunity under 42 U.S.C. § 1983 for acts that are negligent under state common law.  *See Robinson*, 278 F.3d at 1016 (holding that qualified immunity applied to claims under § 1983, but not to state law negligence claims). Applying the "clearly established" requirement of the qualified immunity analysis to all state common law negligence claims would effectively eviscerate state common law.  *See Johnson v. Bay Area Rapid Transit Dist.*, 724 F.3d 1159, 1171 (9th Cir. 2013) ("the doctrine of qualified immunity does not shield defendants from state law claims").   And here it would make meaningless the California Court of Appeals' express holding that there is no qualified immunity for state law negligence claims.  *See*

*Venegas*, 63 Cal. Rptr. 3d at 755. We decline to apply a doctrine that has evolved in the narrow and unique context of § 1983 claims in a way that would undermine state law that expressly departs from the federal standard concerning qualified immunity.

Finally, the defendants contend that the negligence claim is barred by two kinds of state law statutory immunity. First, they argue that California Government Code section 821.6 immunizes the officers from liability. Section 821.6 provides: "A public employee is not liable for an injury caused by his instituting or prosecuting any judicial or administrative proceedings within the scope of his employment, even if he acts maliciously and without probable cause." Cal. Gov't Code § 821.6. And they claim that this immunity has been extended to protect officers engaged in investigations leading up to formal proceedings. We have rejected similar arguments in the past. *Sharp v. County of Orange*, 871 F.3d 901, 920–21 (9th Cir. 2017) ("[t]he 'prosecutorial' immunity under Cal. Gov. Code § 821.6 does not apply because it is limited to malicious-prosecution claims." (citing *Sullivan v. County of Los Angeles*, 12 Cal. 3d 710, 117 (1974))); *Blankenhorn v. City of Orange*, 485 F.3d 463, 467 (9th Cir. 2007) (holding that section 821.6 immunity applies only to acts done in furtherance of an investigation into a crime).

Second, the officers also claim immunity under California Government Code section 820.2, which provides immunity to public employees from liability for injuries "resulting from his act or omission where the act or omission was the result of the exercise of discretion vested in him, whether or not such discretion be abused." Cal. Gov't Code § 820.2. However, the California Supreme Court has held that this immunity applies only to policy decisions, not to

operational decisions like the decision to enter the Mendez residence here. *See Caldwell v. Montoya*, 10 Cal. 4th 972, 981 (1995); *see also Sharp*, 871 F.3d at 920. Hence, section 820.2 immunity does not apply.

# VI

We affirm the district court's holding that officers Conley and Pederson are liable for violations of the Mendezes' Fourth Amendment rights. On remand, the judgment shall be amended to award all damages arising from the shooting in the Mendezes' favor as proximately caused by the unconstitutional entry, and proximately caused by the failure to get a warrant. Judgment shall also be entered in the Mendezes' favor on the California negligence claim for the same damages arising out of the shooting.[4]

**AFFIRMED IN PART, REVERSED IN PART.**

---

[4] Plaintiffs are also entitled to reasonable attorney fees. 42 U.S.C. § 1988.

Costs on appeal shall be borne by the defendants.