NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

HILDA TORRES, et al., *Plaintiffs/Appellants*,

*v.*

MARICOPA COUNTY, et al., *Defendants/Appellees*.

No. 1 CA-CV 23-0768

FILED 10-08-2024

Appeal from the Superior Court in Maricopa County
No. CV2020-004538
The Honorable Scott A. Blaney, Judge

**AFFIRMED**

COUNSEL

Ahwatukee Legal Office PC, Phoenix
By David L. Abney (argued)
*Co-Counsel for Plaintiffs/Appellants*

Knapp & Roberts PC, Scottsdale
By Craig A. Knapp, David S. Friedman
*Co-Counsel for Plaintiffs/Appellants*

Maricopa County Attorney's Office, Phoenix
By Pamela A. Hostallero, Charles Trullinger, Sean M. Moore (argued)
*Counsel for Defendants/Appellees*

---

**MEMORANDUM DECISION**

Presiding Judge Maria Elena Cruz delivered the decision of the Court, in which Judge Samuel A. Thumma and Judge Andrew M. Jacobs joined.

---

**C R U Z**, Judge:

¶1        Plaintiffs Hilda and Ricardo Torres,[1] surviving parents of Juan Torres, appeal the grant of summary judgment in this wrongful death case in favor of defendants deputy sheriffs Wilmer Tinoco and Anthony Kirkland, Maricopa County ("the County"), and Maricopa County Sheriff Paul Penzone.  For the following reasons, we affirm.

**FACTUAL AND PROCEDURAL HISTORY[2]**

¶2        Shortly after midnight on April 13, 2019, deputies Tinoco and Kirkland responded to a domestic disturbance call.  The caller reported that Juan was trying to hurt his family, was not mentally okay, and could be armed with a hammer.

¶3        After arriving at the Torres' property in Buckeye, Arizona, the deputies spoke with family members.  Juan suddenly appeared and repeatedly shouted "shoot me!" while erratically waving a hammer and wrench.  The deputies repeatedly ordered Juan to get on the ground and drop the hammer and wrench.  Juan ignored their commands.  The deputies and Juan's family repeatedly told Juan that he was not in any trouble and wanted to help him.  After a few minutes, Juan walked away.

¶4        The deputies began discussing applying "less lethal" measures and called the fire department to respond so they could assist in helping Juan once they were able to disarm him.  Juan reemerged and again

---

[1]     Although Hilda and Ricardo Torres are both named plaintiffs in this case, a wrongful death action in Arizona involves only one statutory plaintiff brought for and on behalf of the statutory beneficiaries.  *See* Ariz. Rev. Stat. ("A.R.S.") § 12-612; *Wilmot v. Wilmot*, 203 Ariz. 565, 569, ¶ 11 (2002); *Begay v. City of Tucson*, 148 Ariz. 505, 508 (1986); *Nunez v. Nunez*, 25 Ariz. App. 558, 562 (1976).

[2]     Appellants admit the factual allegations as cited herein.

erratically waved the wrench and hammer. The deputies engaged Juan in conversation, but Juan continued to yell at them to shoot him and refused their commands to put down the wrench and hammer. Juan suddenly moved towards the deputies, lunged at Deputy Tinoco, screamed, "die, motherfucker!" and charged forward as he hurled the wrench at Deputy Tinoco. Deputy Tinoco turned and the wrench struck him on his upper back. Juan still had the hammer in his hand and was facing Deputy Kirkland. Both deputies fired their weapons at Juan from about fifteen feet, striking him multiple times. The deputies rendered emergency aid until medical personnel arrived, but Juan died shortly after. Approximately four minutes elapsed from the time the deputies arrived on the scene to the shooting.

¶5 Plaintiffs sued defendants for wrongful death damages. They alleged theories of negligence, negligent training and supervision, negligent infliction of emotional distress, negligence per se, and intentional infliction of emotional distress. Juan's parents alleged the County and Penzone were negligent in hiring, training, and supervising the deputies. They also alleged the County was vicariously liable for Penzone and the deputies' conduct and that Penzone was vicariously liable for the deputies' actions. The superior court dismissed the vicarious liability claims against the County.[3]

¶6 Plaintiffs then filed an amended complaint, which omitted the County as a defendant, omitted the negligence per se claim, retained the theories alleged in the original complaint and added a claim for battery. The amended complaint alleged the deputies' pre-shooting conduct unnecessarily escalated the situation in which Juan may have been attempting to commit "suicide by cop." It alleged the deputies' negligent conduct "proximately caused or contributed to causing" Juan's intentional death and that Penzone was vicariously liable for the acts and omissions of the deputies. The amended complaint also alleged Penzone was negligent in hiring, training, and supervising the deputies.

¶7 After disclosures and some discovery, the defendants moved for summary judgment on all counts. After full briefing and oral argument,

---

[3]     *See Fridena v. Maricopa County*, 18 Ariz. App. 527, 530-31 (1972) (noting that counties are generally not liable for the acts of elected officials whose duties are imposed by law); *Hernandez v. Maricopa County*, 138 Ariz. 143, 146 (App. 1983) (holding that a county cannot be held vicariously liable for the alleged negligence of a justice of the peace and his staff, whose duties are imposed by law not the county, the county having no right of control).

the superior court granted summary judgment in favor of defendants on all counts. The court found that the damages plaintiffs sought arose from Juan's death, which occurred as the direct result of the intentional act of shooting while Juan was physically attacking the deputies. As such, the court found that plaintiffs could not recover damages through any negligence-based claims, citing *Ryan v. Napier*, 245 Ariz. 54 (2018). Because plaintiffs could not establish negligence claims against the deputies individually, the court then found plaintiffs could not maintain their vicarious liability claims against the deputies' employer.

**¶8** The superior court also found that defendants established by a preponderance of the evidence that the use of deadly force was justified under A.R.S. § 13-410(C) and thus were immune from civil liability for battery under A.R.S. § 13-413. Finally, the court found that the deputies' conduct was not so extreme and outrageous as to state a claim for intentional infliction of emotional distress.

**¶9** The court entered final judgment and this timely appeal followed. We have jurisdiction. A.R.S. § 12-2101(A)(1).

## DISCUSSION[4]

**¶10** We review de novo a grant of summary judgment to determine if the superior court properly applied the law and whether any genuine issues of material facts exist. Ariz. R. Civ. P. 56(a); *Dinsmoor v. City of Phoenix*, 251 Ariz. 370, 373, ¶ 13 (2021). We view the record in the light most favorable to the nonmoving party. *Dinsmoor*, 251 Ariz. at 373, ¶ 13.

I.    Negligence-Based Claims

**¶11** Appellants argue that under *Ryan* they may assert negligence claims for the deputies' pre-shooting negligent conduct.

**¶12** In Arizona, negligence and intentional torts, such as battery, are mutually exclusive grounds for liability for a given act because the elements required to prove the respective claims are different. *Ryan*, 245 Ariz. at 59-60, ¶¶ 16-20 (noting the "fundamental distinction between negligence and an intentional tort is whether the consequences of the act or omission are unintentional or intentional"). *Ryan*, a negligence case involving the intentional release of a police dog, rejected negligent-use-of-intentionally-inflicted-force as a cognizable claim and concluded that the

---

4       Our resolution of this case obviates the need to address any argument about qualified immunity or gross negligence.

defendant deputy and county sheriff could not be liable in negligence when the facts only supported a claim for intentional battery. *Id.* at 60-62, ¶¶ 21, 22, 32. "[I]f a defendant acts with the intent to cause a harmful or offensive touching (battery)," said the Arizona Supreme Court in *Ryan*, "that same act cannot constitute negligence." *Id.* at 60, ¶ 20.

¶13 Appellants here do not dispute that the deputies intentionally shot Juan. But they argue the deputies' conduct can be separated into two distinct phases: (1) pre-shooting negligent acts and omissions, which give rise to their negligence claims, and (2) the later separate intentional shooting, which gives rise to their battery claim. They argue that the deputies' negligent, pre-shooting mishandling of the domestic-violence call set the stage for the later preventable intentional shooting and that permitting a separate negligence claim for the pre-shooting conduct does not run afoul of the principles set forth in *Ryan*.

¶14 Appellants rely on language in *Ryan* that permits plaintiffs to plead negligence claims for conduct that is "independent of the intentional use of force." *Id.* at 62, ¶ 31. Seeking to carve out discrete acts of negligence here, appellants rely on expert opinion that the deputies failed to: (1) defuse and de-escalate the situation; (2) clear space to take cover or retreat; (3) wait for backup; (4) wait for nearby K-9 units to arrive to control Juan; and (5) control Juan with non-fatal means. But even if these alleged negligent acts and omissions were true, they are not "independent of the intentional use of force," *id.*, because they led directly to that intentional use of force. *Ryan* thus cannot support plaintiffs' claims here.

¶15 *Ryan* explicitly rejected the argument that an actor's internal evaluation about whether to use force and the decision to do so can by themselves constitute negligence. *Id.* at 60-61, ¶ 22. The court explained that the officer's internal evaluation of whether to release the dog "and his decision to do so was part and parcel of his intent to inflict harmful and offensive contact." *Id.* So it is here. The deputies' decisions in this case were part of their continuing choice about whether to use force. Thus, even assuming they could be shown to be negligent, these decisions were likewise "part and parcel" of their imminently-following intentional infliction of physical harm. *Ryan* thus does not allow them to support a negligence claim here.

¶16 Appellants provide no case law supporting their position that Arizona permits a separate, actionable claim for negligent acts and omissions that later contributed to a separately actionable intentional battery. Their reliance on *Garcia v. City of South Tucson*, 131 Ariz. 315 (App.

1981) is misplaced. *Garcia*, which predates *Ryan* by decades, involved the mistaken shooting of a police officer by another officer during an attempt to flush out a lone gunman who was firing random shots from a residence. *Id*. at 317. *Garcia* did not analyze the propriety of a negligence versus a battery case; it addressed issues of the remedy of workmen's compensation, the applicability of the fireman's rule, jury instructions, and the propriety of a jury verdict, none of which are relevant here. *Id*.

¶17        *Mendez v. County of Los Angeles*, 897 F.3d 1067 (9th Cir. 2018) also provides no support for appellants' position. In *Mendez,* the Ninth Circuit Court of Appeals held that the plaintiffs had an independent basis under California negligence law to recover from deputy sheriffs who unlawfully entered a structure, misperceived a threat posed by a BB gun, and shot two people resulting in injury. *Id*. at 1071-1072. But the relevant California negligence law considers "law enforcement personnel's tactical conduct and decisions preceding the use of deadly force [as] relevant considerations . . . in determining whether the use of deadly force gives rise to negligence liability." *Id*. at 1082 (quoting *Hayes v. County of San Diego*, 305 P.3d 252 (Cal. 2013)). In this regard, California negligence law is at odds with *Ryan's* preclusion of liability for negligence for intentional acts injuring another.

¶18        Although not addressed by the parties here, Arizona's wrongful death statute also provides support for this conclusion. That statute permits an action for wrongful death damages when the death is caused by an act that, if the death had not ensued, would have entitled the decedent to maintain a personal injury action. A.R.S. § 12-611; *see Barragan v. Superior Court*, 12 Ariz. App. 402, 405 (1970) (stating that the condition "that the action could have maintained by the deceased if death had not ensued, has reference not to the nature of the loss or injury but merely to the circumstances under which the injury arose and the nature of the wrongful act, neglect or default complained of."). Appellants' two-phase framing of this case removes the negligence claim from the reach of damages under the wrongful death act because they make no argument that Juan, had he lived, could have pursued a personal injury action for the discrete alleged negligent acts preceding the deputies' intentional use of force.

¶19        The deputies' pre-shooting conduct here did not constitute negligence separable from the immediately-ensuing intentional shooting. The record in this case only supports a claim for intentional battery. Because the shooting was intentional, the negligence-based claims are

inapplicable to these facts, and the superior court properly granted summary judgment on the negligence claim. *See Ryan*, 245 Ariz. at 62, ¶ 32.

**¶20** Consequently, in the absence of proof of underlying negligence causing harm, the court also properly granted summary judgment on appellants' claims for negligent infliction of emotional distress. *See Keck v. Jackson*, 122 Ariz. 114, 115 (1979) (concluding that damages for negligent infliction of emotional distress are recoverable if caused by the defendant's negligence). For the same reason, neither the County[5] nor Penzone can be found liable for any direct negligent hiring or supervision claims. *See Mulhern v. City of Scottsdale*, 165 Ariz. 395, 398 (App. 1990) ("the employer is not negligent in hiring or retaining the employee as a matter of law if the theory of the employee's underlying negligence fails.").

II.     Battery Claim

**¶21** Appellants argue the superior court improperly granted summary judgment on the battery claim, arguing that whether the deputies were justified in shooting at Juan is a question of fact for the jury to resolve.

**¶22** Under Arizona law, law enforcement officers who commit battery are justified in, and thus not liable for, employing deadly force when a peace officer reasonably believes deadly force is necessary "[t]o defend himself or a third person from what the . . . officer reasonably believes to be the use or imminent use of deadly physical force." A.R.S. § 13-410(C)(1) (setting out elements for justification of use of deadly physical force in law enforcement); A.R.S. § 13-413 (prohibiting civil liability for justified conduct).

**¶23** Plaintiffs are correct that, as a pleading matter, *Ryan* did not preclude their battery claim. However, defendants in this civil case had the burden of proving justification as an affirmative defense by a preponderance of the evidence. *Ryan*, 245 Ariz. at 64-65, ¶¶ 43-46. If a defendant factually establishes the undisputed elements of a justification defense on the record before the superior court, then the court may enter

---

[5]     Arguably, plaintiffs voluntarily relinquished their claim for direct negligence against the County after the dismissal of the vicarious liability claim against the County and the filing of the first amended complaint that omitted the County as a party. *See Campbell v. Deddens*, 21 Ariz. App. 295, 297 (1974) (first amended complaint supersedes the original complaint; the original complaint then has no further effect or authority).

judgment in the defendants' favor. *See Weekly v. City of Mesa*, 181 Ariz. 159, 166 (App. 1994).

¶24        Here, the record shows Juan endangered the deputies' lives by throwing a wrench at Deputy Tinoco while charging and yelling "die, motherfucker!" and that Juan still had the hammer in his hand and was facing Deputy Kirkland when they fired their weapons. Both the wrench and hammer were weapons capable of inflicting death or serious bodily harm on the deputies. *See* A.R.S. § 13-105(14) ("'Deadly physical force' means force that is used with the purpose of causing death or serious physical injury or in the manner of its use or intended use is capable of creating a substantial risk of causing death or serious physical injury."). That Juan was able to strike Deputy Tinoco with the wrench he threw some distance underscores that he could have struck Deputy Tinoco with the hammer, which could have caused serious physical injury. The superior court properly found that no jury could find that use of deadly force in response to an assault with two deadly weapons was anything other than objectively reasonable.

¶25        The superior court properly dismissed the battery claim because defendants established by a preponderance of the evidence that the deputies reasonably believed the use of deadly force was necessary to defend themselves from what they reasonably believed to be the use or imminent use of deadly physical force against them. *See* A.R.S. § 13-410(C)(1). And appellants' argument that this inquiry is and always must be a question of fact for the jury to decide misses the mark. *Cf. Lal v. California*, 746 F.3d 1112, 1118 (9th Cir. 2014); *Smith v. City of Hemet*, 394 F.3d 689, 701 (9th Cir. 2005) (en banc). The deputies are therefore immune from civil liability for battery under A.R.S. § 13-413 because their actions were justified under A.R.S. § 13-410(C)(1).

III.    Intentional Infliction of Emotional Distress Claim

¶26        Appellants challenge the superior court's finding that the deputies' conduct was not so extreme and outrageous to state a claim for intentional infliction of emotional distress.

¶27        Among other things, a claim for intentional infliction of emotional distress requires proof of extreme and outrageous conduct. *Ford v. Revlon*, 153 Ariz 38, 43 (1987). The conduct must be "so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Cluff v. Farmers Ins. Exch.*, 10 Ariz. App. 560, 562

(1969) (quoting Restatement (Second) Torts Section 46, Comment (d) (1965), *overruled in part on other grounds by Godbehere v. Phoenix Newspapers, Inc.*, 162 Ariz. 335 (1989). The superior court determines whether acts are sufficiently extreme and outrageous to state a claim for relief. *Mintz v. Bell Atl. Sys. Leasing Int'l, Inc.,* 183 Ariz. 550, 554 (App. 1995). The issue goes to the jury only when reasonable minds could differ in determining whether the conduct was sufficiently extreme or outrageous. *Id.*

¶28 Here, the deputies responded to a call for help from Juan's family, who feared Juan would hurt them. The deputies observed Juan carrying a wrench and hammer and displaying erratic and aggressive behavior toward them, including repeatedly demanding they shoot him. The deputies attempted to de-escalate the situation by telling Juan they were there to help him and that he had not done anything wrong. The deputies only engaged Juan with firearms after he assaulted Deputy Tinoco by hurling a wrench at him while yelling "die, motherfucker!" The superior court properly found that no reasonable juror could find the deputies' conduct was extreme and outrageous. The superior court did not err in dismissing this claim.

IV.     Vicarious Liability Claim

¶29 The parties engaged in a contentious debate about the viability of a vicarious liability claim against the County. The judgment in favor of the deputies obviates any vicarious liability claim against the County or Penzone. *See Laurence v. Salt River Project Agric. Improvement & Power Dist.*, 255 Ariz. 95, 106, ¶ 44 (2023) ("Dismissing a tort claim against an employee because the claim lacks merit requires the court to also dismiss a claim against an employer under the doctrine of respondeat superior.").

**CONCLUSION**

¶30 For the foregoing reasons, we affirm the superior court's ruling. We award costs to defendants upon compliance with Arizona Rule of Civil Appellate Procedure 21.

