**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| SHELLY LAL, individually and in her representative capacity on behalf of the Estate of Kamal L. Lal, decedent, and in her representative capacity as guardian ad litem for Sagar Lal; ESTATE OF KAMAL L. LAL; SAGAR LAL, a minor, <br> *Plaintiffs-Appellants*, <br><br> v. <br><br> STATE OF CALIFORNIA; CALIFORNIA HIGHWAY PATROL; FRANK NEWMAN, C.H.P. Officer; MATTHEW OTTERBY, C.H.P. Officer, <br> *Defendants-Appellees*. | No. 12-15266 <br><br> D.C. No. 4:06-cv-05158-PJH <br><br><br> OPINION |

Appeal from the United States District Court
for the Northern District of California
Phyllis J. Hamilton, District Judge, Presiding

Argued and Submitted
February 13, 2014—San Francisco, California

Filed March 31, 2014

Before: Consuelo M. Callahan and Milan D. Smith, Jr., Circuit Judges, and Alvin K. Hellerstein, Senior District Judge.[*]

Opinion by Judge Callahan

## SUMMARY[**]

### Civil Rights

The panel affirmed the district court's summary judgment which found that police officers were entitled to qualified immunity in a 42 U.S.C. § 1983 action alleging that the officers used excessive force when they shot and killed Kamal Lal following a high speed chase.

The panel held that under the totality of the circumstances, the district court's determinations that the officers objectively feared immediate serious physical harm and that a reasonable officer could have believed that Lal threatened him with immediate serious danger were sound. The panel noted that Lal led the police on a high speed chase for 45 minutes before the officers were able to disable his pickup truck. In the four minutes that elapsed after Lal exited the truck, he first tried to seriously injure himself, tried to

---

[*] The Honorable Alvin K. Hellerstein, Senior District Judge for the U.S. District Court for the Southern District of New York, sitting by designation.

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

provoke the officers into shooting him by pantomiming shooting at them with his cell phone, threw rocks at the officers, and then, ignoring directions to stop, advanced upon two officers threatening them with a large rock he held over his head. The panel held that although Lal may have been intent on committing "suicide by cop," it did not negate the fact that he threatened the officers with such immediate serious harm that shooting him was a reasonable response.

## COUNSEL

Charles Stephen Ralston (argued), Mi Wuk Village, California, and A. Catherine LaGarde, Kentfield, California, for Plaintiffs-Appellants.

Kamala D. Harris, Attorney General of California, Jon Wolff, Steven M. Gevercer, and John P. Devine (argued), San Francisco, California, for Defendants-Appellees.

## OPINION

CALLAHAN, Circuit Judge:

This case arises out of a tragic incident. Kamal Lal ("Lal"), upset over a domestic disturbance with his wife, led police on a 45-minute high-speed chase on and off freeways before the officers were able to disable his vehicle. When Lal exited his truck he first tried to seriously hurt himself, then tried to provoke the officers into shooting him, and finally advanced on two officers holding a large rock over his head. When Lal refused to stop and continued to advance to within a few feet of the officers, the officers shot him. Lal's widow,

daughter, and estate ("Plaintiffs") filed this action, asserting claims under 42 U.S.C. § 1983 and California law. The district court granted summary judgment for the defendants, finding that the officers were entitled to qualified immunity. We affirm the district court's determinations that the officers thought that Lal posed an immediate threat of serious physical harm and that the officers' beliefs were reasonable.

# I

On March 6, 2005, the South San Francisco Police Department received a 911 telephone call from Lal's wife reporting a domestic disturbance involving her husband, Lal. Lal interrupted the call, the police called back, and after another disconnect, the police dispatcher managed to speak to Lal's wife and overheard someone hitting her. While the dispatcher was still on the phone, Lal drove away in his grey Toyota pickup truck, and his wife gave the dispatcher the truck's license plate number as well as Lal's cell phone number.

Lal proceeded to the freeway where he entered southbound Highway 101. The California Highway Patrol ("CHP") was notified and a high-speed chase ensued. For approximately 45 minutes, Lal traveled south and north on Highway 101, exiting the freeway to travel over city streets, and reentering the freeway. He did this at speeds ranging from 50 to over 100 miles an hour. At one point while on the freeway, Lal may have attempted to cause a motorcycle officer who was pursuing him to crash.

A police sergeant contacted Lal on his cell phone and told him to slow down because he would otherwise injure other people. Lal responded that he wanted to kill himself, and on

a subsequent call, twice stated that he wanted to kill himself or have the police shoot him.

Meanwhile CHP Officer Frank Newman saw the pursuit heading toward his position and entered traffic to become the lead police vehicle. During the pursuit, Newman learned that Lal wanted officers to shoot him. The dispatcher also learned that Lal did not have any record of gun ownership and did not have any outstanding warrants.

Eventually Lal took an exit from the freeway onto a collector road where the CHP officers deployed a spike strip. Lal drove over the strip, partially disabling his vehicle, and managed to reenter the freeway and reach another off-ramp, where he lost control of his truck and veered off the ramp. The truck came to a stop in a ditch alongside the freeway. When Lal got out of his vehicle, numerous officers, including CHP Officer Otterby, yelled commands at him. Officer Newman addressed Lal through his patrol car loudspeaker and told him to put his hands in the air. Lal briefly complied, and then, putting his hands in his pockets, responded to Newman by saying "just shoot me, just shoot me."

Lal then reached down to the ground and picked up a big rock that he smashed against his forehead three or four times, causing considerable bleeding. He next attempted to pull a four-foot long metal pole out of the ground and impale himself on it.

Lal started walking toward Officer Newman and CHP Officer Otterby, carrying a rock in his hand. When the officers told him to drop it, he pretended that his cell phone (which was also in his hand) was a pistol and pantomined pointing it at the officers. Officer Otterby recognized that the

cell phone was not a gun and yelled to the officers not to shoot. Lal then threw several soft-ball sized rocks at Officers Newman and Otterby. The rocks missed the officers, but one shattered the spotlight on the patrol car.

During these events, Officer Newman requested assistance from any agency that could respond to the situation with less than lethal assistance, and was told that a K-9 unit was on its way.

Lal began walking toward the patrol cars while continuing to throw rocks. As he neared Officers Newman and Otterby, who were standing shoulder to shoulder, he held a large rock about the size of a football above his head. Lal failed to drop the rock when ordered by Officer Otterby to do so. Lal kept advancing at an irregular pace, forcing the officers to back up. Officer Otterby told Lal, "we are going to have to shoot you if you don't drop that rock." Lal continued to advance, and when he was within a few feet of the officers, they simultaneously shot him. The eight shots killed Lal despite efforts to resuscitate him. Just over four minutes elapsed between the time Lal's truck stopped moving and his shooting.

## II

Plaintiffs filed this action in state court in December 2005 against California, the CHP, and Officers Newman and Otterby, asserting that Plaintiffs' rights were violated when Lal was shot and killed. Plaintiffs asserted claims under 42 U.S.C. § 1983 for violations of the Fourth and Fourteenth Amendments and under California law for negligence, wrongful death, and assault and battery. In August 2006, the case was removed to the district court for the Northern

District of California on the ground of federal question jurisdiction over the central claim that the officers had used excessive force in violation of the Fourteenth Amendment. After removal, Plaintiffs' attorney failed to prosecute the case and the district court dismissed the case. New counsel filed a motion for relief from judgment pursuant to Federal Rule of Civil. Procedure 60(b). The motion was denied, Plaintiffs appealed to the Ninth Circuit, and the Ninth Circuit reversed and remanded. *Lal v. State of California*, 610 F.3d 518 (9th Cir. 2010).

On remand, certain issues were dismissed, a second amended complaint relating to the state court claims was filed, the parties conducted discovery, and the defendants moved for summary judgment. On January 10, 2012, the district court granted the motion and dismissed the case. Plaintiffs filed a timely notice of appeal.

The district court offered the following explanation for its ruling:

> [T]aking the totality of circumstances into account, and viewing the undisputed evidence in the light most favorable to plaintiffs, the court finds that the officers acted reasonably. The evidence demonstrates: the officers were aware that officers were originally called to Lal's home for a domestic violence report by Lal's wife about him; Lal led police officers on a long and high speed chase over city streets as well as the freeway, during which Lal drove recklessly and in apparent disregard of others' safety; Lal indicated he wanted to kill himself or have the officers shoot him;

when Lal got out of his car near the ditch at the off ramp, he did not comply with the officers' instructions to put his hands up; Lal hit his own head with a rock until he bled and attempted to impale himself on a metal pole; Lal mimed using his cell phone as a gun that he pointed at the officers, which initially prompted Otterby, who recognized the phone was not a gun, to instruct all officers on the scene not to shoot; Lal picked up rocks and threw them at the officers' car, breaking the light on the car; Lal came toward the officers with a football sized rock over his head, and ignored the officers' instructions to put the rock down. Lal advanced with this rock to within a few feet of the officers; and both officers simultaneously shot Lal. . . . Based on these facts, the court concludes that defendants had probable cause to believe that they faced a threat of serious physical harm from Lal. As such their conduct in using deadly force was objectively reasonable.

## III

We review "de novo a grant of summary judgment on the basis of qualified immunity," and in "determining whether summary judgment is appropriate, [view] the evidence in the light most favorable to the non-moving party." *Garcia v. County of Merced*, 639 F.3d 1206, 1208 (9th Cir. 2011); *see also Elder v. Holloway*, 510 U.S. 510, 516 (1994). In *Smith v. City of Hemet*, 394 F.3d 689, 701 (9th Cir. 2005) (en banc), we reiterated:

> The Supreme Court has said that "the 'reasonableness' inquiry in an excessive force case is an objective one: The question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them[.]" [*Graham v. Connor*, 490 U.S. 386, 397 (1989)] . . . . The question is not simply whether the force was necessary to accomplish a legitimate police objective; it is whether the force used was reasonable in light of all the relevant circumstances.

(Internal quotation marks and citations omitted).

In *Mattos v. Agarano*, 661 F.3d 433 (9th Cir. 2011) (en banc), we quoted the Supreme Court's explanation that "[t]he doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Id*. at 440 (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). We further explained that qualified immunity shields an officer from liability even if his or her action resulted from "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact," and that the "purpose of qualified immunity is to strike a balance between the competing need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Id.* (internal quotation marks and citations omitted). In *Messerschmidt v. Millender*, 132 S. Ct. 1235, 1244 (2012), the Supreme Court reiterated that "[q]ualified immunity gives

government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." (Internal quotation marks and citations omitted). Furthermore, because "qualified immunity is 'an immunity from suit rather than a mere defense to liability . . . it is effectively lost if a case is erroneously permitted to go to trial.'" *Pearson*, 555 U.S. at 231 (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)).

In determining whether an officer is entitled to qualified immunity, we consider (1) whether there has been a violation of a constitutional right; and (2) whether that right was clearly established at the time of the officer's alleged misconduct. *Pearson*, 555 U.S. at 232. Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id*. at 236.

The measuring rod for determining whether an official's conduct violates a plaintiff's constitutional right was set forth by the Supreme Court in *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2083 (2011):

> A Government official's conduct violates clearly established law when, at the time of the challenged conduct, "[t]he contours of [a] right [are] sufficiently clear" that every "reasonable official would have understood that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

The Supreme Court provided further guidance in *Graham v. Connor*, 490 U.S. 386 (1989). We have held that *Graham* directs courts to first consider the nature and quality of the alleged intrusion and to then "consider the governmental interests at stake by looking at (1) how severe the crime at issue is, (2) whether the suspect posed an immediate threat to the safety of the officers or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight." *Mattos*, 661 F.3d at 441. Of these, the most important is whether the suspect posed an immediate threat to the safety of the officers or others. *Id*. (citing *City of Hemet*, 394 F.3d at 702).

This is the crux of the appeal. The district court found both that Lal posed an immediate threat to the safety of the officers, and that, even if he did not, a reasonable officer could have thought he did. Both conclusions are sound.

Plaintiffs admit that Lal was holding a football-sized rock over his head when he continued to advance toward Officers Newman and Otterby, who shot him when he was about a yard away. In light of Lal's prior actions – the high speed chase, hitting himself with a stone, throwing rocks at the officers – the officers reasonably believed that Lal would heave the rock at them. Indeed, Plaintiffs do not really argue otherwise.

Instead, they argue that the officers should have retreated or that they somehow should have defused the situation before Lal started advancing. These contentions are not factually or legally persuasive. The confrontation was in a ditch alongside a freeway, and the officers could hardly allow Lal to proceed on foot onto the freeway. Nor could they have allowed Lal to remain in his truck and reenter the freeway, for

Lal's wish to commit suicide would have endangered the lives of others, as well as his own.  Indeed, the officers were exploring alternate methods of dealing with Lal, attempting to continue the engagement with Lal until the K-9 unit arrived.  But Lal forced the issue by advancing on the officers.  By the time that Lal, contrary to the officer's commands, advanced to within seven or eight feet of the officers, thereby creating a reasonable fear of imminent serious physical harm, spraying Lal with pepper spray would not have stopped Lal from hurling the rock at the officers. The fact that Lal was intent on "suicide by cop" did not mean that the officers had to endanger their own lives by allowing Lal to continue in his dangerous course of conduct.

Plaintiffs' experts, however, argue that the situation should not have come to this point.  They contend that the officers should have seized Lal earlier, should have used pepper spray, and should have waited for less than lethal devices to arrive.  They criticize the officers for containing Lal in a small area, not waiting, and not retreating.  Clearly, when Lal advanced on the officers with a large rock held over his head, the officers sincerely and reasonably believed that Lal intended to seriously harm them if they did not shoot him.

The cases cited by Plaintiffs are not to the contrary.  In *A.D. v. California Highway Patrol*, 712 F.3d 446 (9th Cir. 2013), the court affirmed the denial of qualified immunity to an officer who had emptied his gun shooting a person who had rammed her car into the police patrol cars after she was cornered following a high speed chase.  The court found that a reasonable jury could find that the officer had "used deadly force with a purpose to harm [the deceased] unrelated to a legitimate law enforcement objective."  *Id.* at 451.  In *Glenn v. Washington County*, 673 F.3d 864 (9th Cir. 2011), the

Ninth Circuit vacated a grant of summary judgment where the police officers used a beanbag shotgun on a person armed with a knife, who was not threatening the police or others when he was shot. *Id*. at 873–74. Unlike those cases, here, Lal was threatening the officers with immediate serious harm.

Plaintiffs, however, argue that under the totality of the circumstances, the jury should be allowed to determine whether the officers were unreasonable in not de-escalating the situation before Lal advanced on the officers with a rock over his head. Citing *Billington v. Smith*, 292 F.3d 1177 (9th Cir. 2002), Plaintiffs argue that where an officer intentionally or recklessly provokes a violent confrontation, he may be held liable for his otherwise defensive use of deadly force. A careful reading of *Billington* weighs against Plaintiffs' perspective in this case. We explained:

> In *Scott v. Henrich* [39 F.3d 912 (9th Cir. 1994)], we held that even though the officers might have had "less intrusive alternatives available to them," and perhaps under departmental guidelines should have "developed a tactical plan" instead of attempting an immediate seizure, police officers "need not avail themselves of the least intrusive means of responding" and need only act "within that range of conduct we identify as reasonable." We reinforced this point in *Reynolds v. County of San Diego*, [84 F.3d 1162 (9th Cir. 1996)] which distinguished *Alexander* because "the court must allow for the fact that officers are forced to make split second decisions." We affirmed summary judgment for the defendant police

officers despite experts' reports stating—like the expert report in the case at bar—that the officers should have called and waited for backup, rather than taking immediate action that led to deadly combat. We held that, even for summary judgment purposes, "the fact that an expert disagrees with the officer's actions does not render the officer's actions unreasonable." Together, *Scott* and *Reynolds* prevent a plaintiff from avoiding summary judgment by simply producing an expert's report that an officer's conduct leading up to a deadly confrontation was imprudent, inappropriate, or even reckless. Rather, the court must decide as a matter of law "whether a reasonable officer could have believed that his conduct was justified."

*Billington*, 292 F.3d at 1188–89 (footnotes omitted).

In the case at bar, there is no suggestion that the officers intentionally provoked Lal. Rather, the totality of the circumstances shows that they were patient. They allowed Lal to lead them on a 45-minute high-speed chase, during which they tried to talk him into surrendering, and when he got out of the truck, they were willing to give him time to cool off. Instead, it was Lal who forced the confrontation. Thus, even assuming that it might have been possible for the officers to have given Lal a wider berth, under our opinion in *Billington*, there is no requirement that such an alternative be explored. A police officer's immunity does not become less if his assailant is motivated to commit "suicide by cop."

**IV**

This lawsuit arose out of a tragic event. Lal was so upset after an argument with his wife that he led the police on a high speed chase for 45 minutes before the officers were able to disable his pickup truck. In the four minutes that elapsed after Lal exited the truck, he first tried to seriously injure himself, tried to provoke the officers into shooting him by pantomining shooting at them with his cell phone, threw rocks at the officers, and then, ignoring directions to stop, advanced upon two officers threatening them with a large rock he held over his head. At that moment, the only alternative force then available to the officers, pepper spray, would not have alleviated the danger of Lal hurling the rock at the officers. Moreover, there was no reason for the officers to believe that Lal would act rationally. Under the totality of the circumstances, the district court's determinations that the officers objectively feared immediate serious physical harm and that a reasonable officer could have believed that Lal threatened him with immediate serious danger are sound. That Lal may have been intent on committing "suicide by cop" does not negate the fact that he threatened the officers with such immediate serious harm that shooting him was a reasonable response. The district court's grant of summary judgment is **AFFIRMED**.