# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ROSE JOHNSON, individually, and
as the Personal Representative of the
Estate of Ryan M. Smith, and behalf
of all beneficiaries; MARK SMITH;
KAHLLENA A. SMITH; LUKE-
MICAH JOHNSON; JALONE
JOHNSON,

　　　　*Plaintiffs - Appellees*,

　　v.

CHRISTOPHER MYERS; RYAN
BEECROFT,

　　　　*Defendants - Appellants*,

and

CITY OF SEATTLE, a municipal
corporation, DANIEL JOHNSON,
DOES, 1-50,

　　　　*Defendants*.

No. 24-349

D.C. No.
2:22-cv-00609-
TSZ

OPINION

Appeal from the United States District Court
for the Western District of Washington
Thomas S. Zilly, District Judge, Presiding

Argued and Submitted September 9, 2024
Seattle, Washington

Filed March 3, 2025

Before: William A. Fletcher and Anthony D. Johnstone,
Circuit Judges, and Jed S. Rakoff, District Judge.[*]

Opinion by Judge W. Fletcher

## SUMMARY[**]

### Excessive Force

The panel affirmed the district court's denial, on a motion for partial summary judgment, of qualified immunity to Seattle police officers in an action alleging the officers used excessive force when they shot and killed Ryan Smith during a response to a 911 call.

Officers Myers and Beecroft responded to a 911 call from Smith's girlfriend that Smith was threatening to kill both himself and her with a knife. After demanding entry into the apartment, Officer Beecroft kicked in the door, revealing Smith standing in the hallway with an open pocketknife in his right hand. The officers shouted a number of overlapping commands and shot Smith when he raised his

---

[*] The Honorable Jed S. Rakoff, United States District Judge for the Southern District of New York, sitting by designation.

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

right arm across his chest and took a step forward. Between the moment Officer Beecroft kicked in the door and the moment Officer Myers began firing his weapon, 5.87 seconds elapsed.

The panel first held that it had jurisdiction over this interlocutory appeal because it did not need to resolve any disputed questions of fact in order to decide whether summary judgment was warranted.

The panel determined that, viewing the evidence in the light most favorable to appellees at this stage of the litigation, Officers Myers and Beecroft were not entitled to qualified immunity on a motion for summary judgment. It was clearly established law that a fatal shooting under these circumstances violated the Fourth Amendment. A reasonable juror could conclude that Smith did not pose such an immediate threat to the safety of the officers or others that the use of deadly force was justified. The panel assumed at this stage that Smith did not brandish or threaten the officers with a knife. He was not actively resisting arrest and may not have comprehended the officers' commands which were shouted at the same time and inconsistent. The officers gave no warnings and the use of a taser might have been available. Given this circuit's case law, a reasonable officer should have been on notice that it was unreasonable to use deadly force solely because Smith was holding a knife in his right hand and raised that hand across his chest.

## COUNSEL

Brian M. Sullivan (argued), Sullivan PLLC, Everett, Washington; Joseph Rome, Law Offices of Joseph Rome Inc. PS, Kirkland, Washington; for Plaintiffs-Appellees.

Thomas P. Miller (argued), Ann E. Trivett, and Rakiah B. Adams, Keating Bucklin & McCormack Inc. PS, Seattle, Washington, for Defendants-Appellants.

W. FLETCHER, Circuit Judge:

Seattle Police Officers Christopher Myers and Ryan Beecroft bring an interlocutory appeal from the district court's denial of their motion for partial summary judgment based on qualified immunity. We affirm.

## I. Background

On April 14, 2019, several Seattle police officers responded to a 911 call made by Katy Nolan. In the call, Nolan said that her boyfriend, Ryan Smith, was being "abusive." When the officers arrived at the apartment building, Nolan was outside. Smith was in an upstairs apartment. In response to a telephone call from the officers, he came downstairs and spoke to the officers outside the building. He was unarmed. Officer Muoio later recalled in a sworn declaration that Smith spoke with Officer Beecroft, and that "Officer Beecroft built an awesome rapport with him." Smith told the officers that he suffered from depression, that he took medication, and that he was not suicidal. Nolan and Smith told the officers that there was "just an argument." Nolan left to spend "a few nights" at a friend's house. The officers did not arrest Smith.

Almost four weeks later, on May 8, 2019, Nolan again called 911, telling the operator that Smith was threatening to kill both himself and her with a knife. She said, "Please get him out. I've been trying to get him to leave and he won't leave." She said that Smith said that blood was everywhere, but that she did not know if Smith was actually hurt. She said that she was bolting herself in the bathroom. Nolan said that she did not need any medical attention, but that Smith "needs help." She reported that Smith was using his fingernails to scrape on the bathroom door.

Daniel Johnson, a 911 Communications Dispatcher, spoke with Nolan. He documented the call in the Computer Aided Dispatch system that appears in officer terminals, writing "SUSP IS SAYING THERE IS BLOOD EVERYWHERE, RP IS INSIDE BATHROOM, HAS NO VISUAL." As officers were dispatched, an inaccurate message was transmitted via radio stating, "caller is now saying there's blood everywhere inside the bathroom."

Officers Christopher Myers and Brian Muoio arrived at Smith's apartment building at 7:22 pm. Officers Ryan Beecroft and Joshua Knight arrived about one minute later. All four officers wore activated body cameras. When Nolan heard police sirens and officers outside of the apartment, she told the dispatcher, "I can hear the cops. No, please don't shoot. No."

The officers entered the building and approached Smith's apartment. All four officers wore protective vests. Officers Myers, Muoio and Knight carried tasers. The apartment was located at the end of a hallway, opening to the left off the hallway. After demanding entry, Myers began to kick the door. Muoio announced "Seattle Police." Myers directed Officer Beecroft to kick in the door. Beecroft

kicked in the door, revealing Smith standing in the hallway of the apartment. His hands were down at his side. He held an open pocketknife in his right hand.

Over the span of approximately five seconds, the officers shouted overlapping commands: "Put your hands up"; "Let me see your hands"; "Get on the f***ing ground"; "Drop the knife"; "Get on the f***ing ground"; and "Drop the knife!"

Smith was 5'7" and weighed 143 pounds. He took several steps forward. As Smith stepped forward, Officers Myers and Beecroft retreated down the outer hallway, resulting in an estimated distance of 4.5 feet between themselves and Smith. Smith never stepped through the doorframe into the outer hallway. All of the officers remained in the outer hallway at a right angle to Smith.

Smith raised his right arm across his chest as he took a step forward. Appellees contend that in so doing Smith could have been complying with the command to put his hands up. The parties dispute whether Smith was still moving toward the officers when he was shot. Appellees contend Smith had come to a complete stop. None of the officers warned Smith that they were about to shoot or to use force against him.

Officer Myers shot first, shooting eight rounds. Officer Beecroft began shooting after Myers began to shoot, shooting two rounds. Between the moment Beecroft kicked in the door and the moment Myers began firing his weapon, 5.87 seconds had elapsed. Smith died from the gunshot wounds.

Rose Johnson, Smith's mother, and others filed a complaint in district court against Officers Myers and Beecroft, dispatcher Daniel Johnson, and the City of Seattle.

In their first amended complaint, Appellees allege claims under 42 U.S.C. § 1983 and state law.  Appellants, Officers Myers and Beecroft, moved for partial summary judgment on Appellees' § 1983 claims on the ground of qualified immunity.

The district court denied the motion for summary judgment.  The court wrote that "before May 8, 2019, when Smith was fatally shot, the law has been 'clearly established' that law enforcement personnel 'may not kill suspects who do not pose an immediate threat to their safety or to the safety of others simply because [the suspects] are armed.'"  The court found that "factual disputes exist concerning (i) whether a reasonable officer in the same situation as Myers and Beecroft would have believed Smith posed an immediate threat to the safety of the officers or others at the scene; and (ii) whether the use of less drastic measures was feasible."

This appeal followed.  We affirm.

## II.  Standard of Review

We review a district court's denial of qualified immunity at summary judgment de novo, "viewing the evidence and drawing all reasonable inferences in the light most favorable to the non-moving party."  *Napouk v. Las Vegas Metro. Police Dep't*, 123 F.4th 906, 914 (9th Cir. 2024) (quoting *Edwards v. Wells Fargo & Co.*, 606 F.3d 555, 557 (9th Cir. 2010)).

## III.  Appellate Jurisdiction

We have jurisdiction under 28 U.S.C. § 1291 to hear appeals from "final decisions."  In *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541 (1949), the Supreme Court held that "certain so-called collateral orders amount to

'final decisions'" that are immediately appealable under § 1291. *Johnson v. Jones*, 515 U.S. 304, 310 (1995) (citing *Cohen*, 337 U.S. at 541). A collateral order "fall[s] in that small class which finally determine claims of right separable from, and collateral to, rights asserted in the action[.]" *Cohen*, 337 U.S. at 546. The denial of a summary judgment motion based on a claim of qualified immunity generally fits within the *Cohen* collateral review exception. *Plumhoff v. Rickard*, 572 U.S. 765, 771–72 (2014).

The Supreme Court has instructed that any "portion of a district court's summary judgment order that, though entered in a 'qualified immunity' case, determines only a question of 'evidence sufficiency,' *i.e.*, which facts a party may, or may not, be able to prove at trial . . . is not appealable." *Johnson*, 515 U.S. at 313. But when a summary judgment order turns on "the application of 'clearly established' law to a given (for appellate purposes undisputed) set of facts," that portion of the order is immediately appealable. *Id.* Thus, whether appellate jurisdiction exists "ultimately turns on the nature of the defendant's argument on appeal." *Est. of Anderson v. Marsh*, 985 F.3d 726, 731 (9th Cir. 2021). For us to have jurisdiction over an interlocutory appeal, we must "assume[] the version of the material facts asserted by the nonmoving party to be correct." *Jeffers v. Gomez*, 267 F.3d 895, 905 (9th Cir. 2001) (quoting *Schwenk v. Hartford*, 204 F.3d 1187, 1195 (9th Cir. 2000)).

Appellants point to evidence in the record, including body camera footage and dispatch audio recordings, contending that we need not resolve any disputed questions of fact in order to decide whether summary judgment is warranted. "We are confined to the question of whether the defendant would be entitled to qualified immunity as a

matter of law, assuming all factual disputes are resolved, and all reasonable inferences are drawn, in plaintiff's favor." *Est. of Anderson*, 985 F.3d at 731 (cleaned up and internal quotation marks and citations omitted). We hold that, so confined, we have jurisdiction to hear this appeal.

## IV. Discussion

An officer asserting a defense of qualified immunity should be denied summary judgment if "(1) the [evidence], taken in the light most favorable to the party asserting injury, show[s] that the officer's conduct violated a constitutional right, and (2) the right at issue was clearly established at the time of the incident such that a reasonable officer would have understood [his] conduct to be unlawful in that situation." *Torres v. City of Madera*, 648 F.3d 1119, 1123 (9th Cir. 2011). We address each inquiry in turn.

### A. Violation of Constitutional Right

We analyze claims of constitutionally excessive force "under the Fourth Amendment's 'objective reasonableness standard.'" *Saucier v. Katz*, 533 U.S. 194, 204 (quoting *Graham v. Connor*, 490 U.S. 386, 388, 394 (1989)). We judge reasonableness "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396 (citing *Terry v. Ohio*, 392 U.S. 1, 20-22 (1968)). The "use of deadly force is reasonable only if 'the officer has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others.'" *Gonzalez v. City of Anaheim*, 747 F.3d 789, 793 (9th Cir. 2014) (cleaned up) (quoting *Scott v. Henrich*, 39 F.3d 912, 914 (9th Cir. 1994)).

It is undisputed that Nolan had barricaded herself in the bathroom. Thus, she was not in immediate danger. The only

dispute is whether the officers were in such immediate danger that Officers Myers and Beecroft were justified in shooting Smith without warning within seconds of breaking down the door.

We consider "the availability of alternative methods of capturing or subduing a suspect" to determine whether a use of force was objectively reasonable. *Smith v. City of Hemet*, 394 F.3d 689, 703 (9th Cir. 2005) (en banc) (citing *Chew v. Gates*, 27 F.3d 1432, 1441 n.5 (9th Cir. 1994)).

Officers Beecroft and Muoio had encountered Smith when they responded to the call by Nolan less than four weeks earlier. Muoio recounted that during this encounter, Smith had come out of the apartment, and that Beecroft had had a peaceful conversation with him, "buil[ding] an awesome rapport."

This time, however, Officer Beecroft made no attempt to establish a rapport with Smith. Instead, as soon as Beecroft kicked down the door, all of the officers immediately shouted overlapping commands. Viewing the evidence in the light most favorable to Appellees, Smith stopped after taking a few steps forward and began to comply with the command to put his hands up. None of the officers deployed their tasers. None of the officers warned Smith that they were about to use deadly force. Myers began shooting a little less than six seconds after Beecroft kicked down the door.

Viewing the evidence in the light most favorable to Appellees, we conclude that a reasonable juror could conclude that Smith did not pose such "an immediate threat to the safety of the officers or others" that the use of deadly force was justified. *Lal v. California*, 746 F.3d 1112, 1117 (9th Cir. 2014).

### B. Clearly Established Right

Appellants insist that, even if Officers Myers and Beecroft violated Smith's constitutional right to be free from the use of excessive force, that right was not clearly established in the circumstances of this case, even viewing the evidence in the light most favorable to Appellees. We disagree.

The law is clearly established when prior case law is "clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply." *D.C. v. Wesby*, 583 U.S. 48, 63 (2018). The Supreme Court has written that "[w]here the suspect poses no immediate threat to the officer and no threat to others, the harm resulting from failing to apprehend him does not justify the use of deadly force to do so." *Tennessee v. Garner*, 471 U.S. 1, 11 (1985). Our court has explained that when a suspect's resistance is not "particularly bellicose," the use of even non-lethal force is not reasonable. *Nelson v. City of Davis*, 685 F.3d 867, 882 (9th Cir. 2012) (internal citations omitted) (quoting *Smith*, 394 F.3d at 703). We have reiterated that "warnings should be given, when feasible, if the use of force may result in serious injury[.]" *Deorle v. Rutherford*, 272 F.3d 1272, 1284 (9th Cir. 2001); *see also Harris v. Roderick*, 126 F.3d 1189, 1201 (9th Cir. 1997).

"'[C]learly established law' should not be defined 'at a high level of generality.'" *White v. Pauly*, 580 U.S. 73, 79 (2017) (per curiam) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011)). To determine whether the law is clearly established in excessive force cases, we need to compare the specific facts of the case before us with the specific facts of previously decided cases. We seldom get excessive force cases in which the facts are identical, or nearly identical, to

those in previously decided cases.  The best we can do is to compare the facts of our case to facts that are sufficiently similar to allow a meaningful comparison.  In *Glenn v. Washington County*, 673 F.3d 864 (9th Cir. 2011), we denied qualified immunity to officers who fired six "beanbags," and then fired eleven shots from semiautomatic weapons, killing Lukus, an intoxicated young man who was "several feet" away from them and was "holding [a] pocketknife to his own neck[.]"  *Id.* at 874, 868.  We concluded that the officers' use of force was not indisputably reasonable, in part, because (1) Lukus never brandished or threatened the officers with his pocketknife; (2) "Lukus may not have been actively resisting arrest, despite his failing to follow the officers' commands to put down the pocketknife," *Singh v. City of Phoenix*, 124 F.4th 746, 751 (9th Cir. 2024) (citing *Glenn*, 124 F.4th at 873-878); (3) "Lukus may not have comprehended the warnings and commands that the officers gave because he was intoxicated and there were other people yelling," *id.* (same); and (4) "less lethal alternatives, such as the use of a taser, may have been available," *id.* (same).

These same factors are present here:  (1) it is disputed whether Smith brandished or threatened the officers with his knife, so we must assume at this stage that he did not; (2) Smith may not have been actively resisting arrest; (3) Smith may not have comprehended the officers's commands because they were shouted at the same time and were inconsistent, and the officers gave no warnings; and (4) the use of a taser might have been available.  While the facts in this case are not identical to the facts in *Glenn*, they provide a meaningful comparison that should have put a reasonable officer on notice that it is unreasonable to use deadly force solely because Smith was holding a knife in his right hand and raised that hand across his chest.  *See also*

*Harris*, 126 F.3d at 1203 (holding that an FBI agent acted unreasonably in shooting an unarmed man who made "no aggressive move of any kind").

Appellants rely on several cases where officers were granted qualified immunity after using deadly force on people with mental illnesses. *See City & Cnty. of San Francisco, Calif. v. Sheehan*, 575 U.S. 600 (2015); *Lal,* 746 F.3d at 1113; *Hart v. City of Redwood City*, 99 F.4th 543 (9th Cir. 2024); *Blanford v. Sacramento Cnty*., 406 F.3d 1110 (9th Cir. 2005). But in each of those cases there were critical factors that are absent here. Unlike Sheehan, Smith did not verbally threaten the officers. *See City & Cnty. of San Francisco*, 575 U.S. at 605. Unlike Lal, Smith did not attack the officers. *See Lal*, 746 F.3d at 1114-15. Unlike Hart, Smith did not rapidly approach the officers. *See Hart*, 99 F.4th at 543. And unlike Blanford, Smith was not armed with a two-and-half-foot sword and did not make "a loud growling" sound after being told to drop the sword. *See Blanford*, 406 F.3d at 1112-13.

In summary, Officers Myers and Beecroft shot Smith slightly less than six seconds after Beecroft kicked down the door to his apartment. In the few seconds between kicking down the door and shooting Smith, the officers shouted a number of overlapping commands. The officers made no attempt to talk to Smith or otherwise de-escalate the situation. Viewing the evidence in the light most favorable to Appellees, Smith had stopped after taking a few steps forward, and was raising his right hand, holding a pocketknife, in compliance with the officers' command to raise his hands. Nothing in the record suggests that Smith ever pointed the knife at the officers or made any aggressive moves toward them. Finally, the officers never warned Smith that they would use deadly force before shooting him

ten times, killing him in the hallway of his apartment. Viewing the evidence in the light most favorable to Appellees, it was clearly established law that a fatal shooting under these circumstances violated the Fourth Amendment.

At trial, a reasonable jury could perhaps conclude that Officers Myers and Beecroft were justified in using deadly force. But a reasonable jury could equally well conclude that they acted unconstitutionally in using deadly force without warning less than six seconds after kicking down the apartment door, when Smith was standing still in his own hallway and raising his right hand in compliance with the officers' command to raise his hands.

## V. Conclusion

Viewing the facts of this case in the light most favorable to Appellees, Officers Myers and Beecroft are not entitled to qualified immunity on a motion for summary judgment.

**AFFIRMED.**