Filed 5/8/25  Flores v. City of Los Angeles CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| ALEJANDRO FLORES et al., Individually and as Successors in Interest, etc., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> CITY OF LOS ANGELES et al., <br><br> Defendants and Respondents. | B334194 <br><br> (Los Angeles County Super. Ct. No. 21STCV37455) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Kevin C. Brazile, Judge. Affirmed.

Akeeb Dami Animashaun for Plaintiffs and Appellants.

Hydee Feldstein Soto, City Attorney, Denise C. Mills, Chief Deputy City Attorney, Kathleen A. Kenealy, Chief Assistant City Attorney, Shaun Dabby Jacobs, Assistant City Attorney, and Sara Ugaz, Deputy City Attorney, for Defendants and Respondents City of Los Angeles and the Los Angeles Police Department.

Collinson, Daehnke, Inlow & Greco and Laura E. Inlow for Defendant and Respondent Steven Ruiz.

_____

Alejandro Flores and Eloina Frutoso (collectively, Plaintiffs) appeal the trial court's summary judgment in their action against the City of Los Angeles, the Los Angeles Police Department, and Officer Steven Ruiz (collectively, Defendants) arising from Officer Ruiz's shooting of Alex Flores (hereinafter, Flores). Plaintiffs argue the trial court erred in granting Defendants' motion for summary judgment on the ground Officer Ruiz's conduct was objectively reasonable under the circumstances. Although we recognize the tragedy of Flores's untimely death, we perceive no error in the judgment, and we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Approximately 8:00 a.m. on November 19, 2019, a motorist flagged down Sergeant Alfredo Ibanez to report a man walking with a large knife on Central Avenue in Los Angeles, California; he was lifting his shirt and rubbing the knife on his stomach.[1] That man was subsequently identified as Flores. Sergeant Ibanez went to investigate, but a few minutes later, the motorist returned to tell him Flores had changed course. Sergeant Ibanez located Flores and broadcast his description and location on his police radio.

Officer Steven Ruiz, Officer Kristina Fuentes, and Detective Brandon Valdez heard Sergeant Ibanez's radio

---

[1]     We construe the facts in the light most favorable to Plaintiffs. (See *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843 (*Aguilar*).)

broadcast that an unruly man with a knife was walking northbound on Central Avenue, near their police station. They decided to respond and assist Sergeant Ibanez. As they left the station, they informed Officer Raul Ruvalcaba about the incident, and he joined them. Officer Ruiz and his fellow officers were concerned Flores could pose a threat to the public because the vicinity is quite busy with pedestrian and vehicular traffic at that time of day.

The officers left the police station just before 8:10 a.m. Officer Ruvalcaba was wearing a body camera that recorded video footage of the incident.[2]

Meanwhile, Sergeant Ibanez had located Flores at the mouth of an alley. Flores was about 200 or 300 feet away from him, looked in his direction, "gave [him] a blank stare[,] and began to walk" away. Sergeant Ibanez suspected Flores was under the influence. He slowly followed Flores in his police vehicle through the alley, at a distance. Flores "was very fidgety" and "kept looking back in [Ibanez's] direction," and was "looking paranoid." Sergeant Ibanez found that behavior "a little suspicious." When Sergeant Ibanez reached the end of the alley, he saw Flores standing on the street corner approximately 150 or 200 feet away; he called out to Flores and asked him what was in his waistband. Flores ignored the question and walked northbound on Central Avenue. Sergeant Ibanez reported Flores's new location on the police radio. Officer Ruiz, Officer Fuentes, Officer Ruvalcaba, and Detective Valdez heard that update at around 8:11 a.m. and jogged toward Sergeant Ibanez's

---

[2] The record also contains other videos of the shooting itself: security camera footage from two nearby businesses and a bystander cellphone video.

3

new location. They reached his patrol vehicle about a minute later. All the officers got into Sergeant Ibanez's vehicle just before 8:12 a.m. to pursue Flores.

About 30 seconds later, the officers spotted Flores standing next to a food vendor. Sergeant Ibanez called out to Flores, told him to stop, and said they needed to talk to him. Flores looked at Sergeant Ibanez and pulled out a knife. The food vendor ran when she saw it. Flores put the knife back in his pocket, the officers (other than Sergeant Ibanez) exited the vehicle and headed toward Flores, and Flores backpedaled into the parking lot of a nearby restaurant, Tam's Burgers. Flores passed a man, a woman, and a child as he fled. Approximately 10 minutes had elapsed since Officer Ruiz and the others first heard Ibanez's initial radio request for assistance.

The officers pursued Flores through the parking lot. Officer Ruiz, Officer Fuentes, and Detective Valdez were not wearing police uniforms because they were working as detectives. Officer Ruvalcaba was wearing a full police uniform. Officer Ruiz identified himself to Flores as a police officer: he lifted his shirt to display the badge on his waistband, tapped the badge, and told Flores " 'Hey, I am a cop, drop the knife, get on the ground.' " During the parking lot encounter, Officer Ruiz drew his firearm because Flores was concealing his hands in his waistband. Officer Ruiz had been told Flores had a knife, so he assumed Flores was trying to conceal the knife from him. Officer Ruiz also noticed Flores appeared rigid and tense, was sweating profusely, and had a blank stare. That suggested to him Flores might be under the influence of drugs.

Flores paused at the other end of the parking lot and looked in Officer Ruiz's direction; he continued to ignore officer

4

commands, then fled again. Officer Ruiz used expletives in his commands to Flores, which in his experience can help to deescalate an encounter with a suspect by communicating the gravity of the situation. As part of Officer Ruiz's efforts to deescalate, he kept his distance from Flores and gave him clear and concise commands.

Nevertheless, when Flores ran, Officer Ruiz jogged after him. The officers continued to command Flores to stop and drop the knife as they chased him across the street and northbound on Central Avenue.

After a few seconds, Flores paused his northbound flight on the sidewalk and started to turn toward the officers. At that point, Officer Ruiz was standing in the roadway, a few feet from the curb and next to a noticeable crack in the pavement. Flores was about 25 feet from Officer Ruiz. The officers commanded Flores to stop and warned him he would be shot. Flores did not comply. Instead, he moved laterally from the sidewalk onto the roadway–still at a distance from Officer Ruiz, but positioning himself north of Ruiz along the same crack in the pavement.

Officer Fuentes and Detective Valdez testified Flores suddenly "stopped and faced southbound directly toward Officer Ruiz." Officer Ruiz first saw the knife for himself when Flores turned and faced him. He estimated it was about a foot long. Flores "was holding the knife in a menacing way and was refusing to comply with . . . commands" to drop it.

Officer Ruiz testified Flores planted his feet and "gave me this odd look like he just made up his mind he is going to come at me." Upon noticing this, Officer Ruiz twice commanded Flores, "Don't come at me!" As Officer Ruiz issued those commands, he

moved closer to the center of the roadway, away from the sidewalk and the pavement crack. So did Flores.

Officer Ruvalcaba, who was about 15 feet away from Flores, was convinced Flores would imminently attack Officer Ruiz because "[h]e lowered his upper body and head like in an attack position, . . . lunging toward Officer Ruiz." Just a few seconds had passed when, according to the officers, Flores started to run toward Officer Ruiz.

Officer Ruiz testified Flores was coming "straight in front of me the entire time" and he only recalled seeing the center mass of Flores's body, not his side. Flores held the knife in his right hand with the blade protruding from the bottom of his fist as he ran. Before Officer Ruiz fired, the officers estimated Flores was at most 12 feet away from Officer Ruiz and "was rapidly closing the distance between" them. In certain frames in the video from Officer Ruvalcaba's body camera, one can see that as Flores began to run, he crossed from the lighter-colored to the darker-colored pavement, so that he moved at an angle approaching the center of the roadway; but at that time, Officer Ruiz was already standing on the darker-colored pavement, closer to the center of the roadway.

Officer Ruiz fired five gunshots at Flores.[3] Toward the end of the standoff and while he was shooting, Officer Ruiz took several steps backward and to the side, thereby moving toward the sidewalk. He did so in fear for his life that Flores would stab him. Officer Ruiz testified he opened fire because: (1) he "perceived [Flores] to be high"; (2) "he is running up to people with this large knife . . . at least a foot long"; (3) "[h]e planted his

---

[3]     Officer Ruvalcaba also deployed his taser "as [Flores] charged after Officer Ruiz," but the taser had no effect.

6

feet, and . . . gave [Officer Ruiz] this odd look like he just made up his mind he is going to come at [Officer Ruiz]"; (4) Officer Ruiz commanded him not to come at him and to stop; and (5) Flores "decided he didn't want to run away any more, [and] he ran at [Officer Ruiz]." Flores died from his injuries.

Plaintiffs originally filed suit in the United States District Court for the Central District of California in July 2020. After discovery, the parties agreed to allow Plaintiffs to dismiss their title 42 United States Code section 1983 claims with prejudice. They also agreed the remaining state law claims could be pursued in the Superior Court of California.

Plaintiffs filed their complaint in this action on October 12, 2021. They alleged three causes of action for: (1) assault and battery against Officer Ruiz and the City of Los Angeles; (2) wrongful death against Officer Ruiz and the City of Los Angeles; and (3) for violation of the Tom Bane Civil Rights Act against the City of Los Angeles, the Los Angeles Police Department, and Officer Ruiz (Civ. Code, § 52.1; Bane Act).

Defendants moved for summary judgment on all causes of action on several grounds, including that Officer Ruiz's conduct was objectively reasonable under the circumstances. The trial court agreed and granted the motion. The court considered the totality of the circumstances surrounding the shooting, including "that Alex Flores ignored officer warnings; Flores ran in Ruiz's general direction with a large knife positioned under his arm as though ready for imminent attack; and Ruiz fired at Flores until he was on the ground and immobile."

Judgment was entered on August 17, 2023. Plaintiffs timely appealed. (See Code Civ. Proc., § 904.1, subd. (a)(1); Cal. Rules of Court, rule 8.104(a)(1)(C).)

7

## DISCUSSION

## I. The Trial Court Did Not Err in Granting Defendants' Motion for Summary Judgment

Plaintiffs argue the trial court erred in granting Defendants' motion for summary judgment because there was a genuine dispute of material fact that Flores was not running toward Officer Ruiz at the time he was shot. They also argue that even if Flores was running at Officer Ruiz with a knife, a reasonable juror could nevertheless conclude the shooting was unreasonable in light of the totality of the circumstances. We are not persuaded by either argument.

### A. Standard of Review

We review the trial court's grant of a motion for summary judgment independently. (*Martinez v. County of Los Angeles* (1996) 47 Cal.App.4th 334, 341 (*Martinez*).)

Summary judgment is appropriate only "if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).) A defendant's motion for summary judgment must show "that one or more elements of the cause of action . . . cannot be established, or that there is a complete defense to the cause of action." (*Id.*, subd. (p)(2).) When a "defendant does so, the burden shifts back to the plaintiff to show that a triable issue of one or more material facts exists." (*Martinez, supra*, 47 Cal.App.4th at p. 342; see also § 437c, subd. (p)(2).)

A triable issue of material fact exists "if . . . the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion." (*Aguilar, supra*, 25 Cal.4th at p. 850; see also Code Civ. Proc., § 437c, subd. (c).)

8

It " 'can only be created by a conflict of evidence. It is not created by "speculation, conjecture, imagination or guess work." ' " (*Brown v. Ransweiler* (2009) 171 Cal.App.4th 516, 525 (*Brown*).) "All doubts as to whether any material, triable issues of fact exist are to be resolved in favor of the party opposing summary judgment." (*Martinez, supra,* 47 Cal.App.4th at p. 341.)

## B. Plaintiffs' Causes of Action Require a Showing That Ruiz Used Unreasonable Force

It has long been "recognized that peace officers have a duty to act reasonably when using deadly force." (*Hayes v. County of San Diego* (2013) 57 Cal.4th 622, 629 (*Hayes*).) The gravamen of each of Plaintiffs' causes of action was that Ruiz used excessive and unreasonable force in shooting Flores and killing him. (See *Murchison v. County of Tehama* (2021) 69 Cal.App.5th 867, 897–898 [Bane Act, assault, and battery]; *Bender v. County of Los Angeles* (2013) 217 Cal.App.4th 968, 977, fn. 4 [Bane Act]; *Lopez v. City of Los Angeles* (2011) 196 Cal.App.4th 675, 685 (*Lopez*) [wrongful death]; *Brown, supra,* 171 Cal.App.4th at p. 534 [negligence and battery]; *Edson v. City of Anaheim* (1998) 63 Cal.App.4th 1269, 1272, 1274–1275 [battery and wrongful death].) Thus, if Ruiz's conduct was reasonable as a matter of law, summary judgment was appropriate on all claims.

## C. The Objective Reasonableness Standard for Police Use of Force

In California, claims that the quantum of force used by police was unreasonable are analyzed under the objective reasonableness standard of the Fourth Amendment as laid out by the United States Supreme Court in *Graham v. Connor* (1989)

490 U.S. 386, 394 (*Graham*).[4] (See *Hernandez v. City of Pomona* (2009) 46 Cal.4th 501, 514; *Brown, supra,* 171 Cal.App.4th at p. 527; *Thompson v. County of Los Angeles* (2006) 142 Cal.App.4th 154, 164, 173.)

Analyzing reasonableness of force under that standard "requires a careful balancing of ' "the nature and quality of the intrusion on the individual's Fourth Amendment interests" ' against the countervailing governmental interests at stake." (*Graham, supra,* 490 U.S. at p. 396.) It also "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." (*Ibid.*) Particularly when deadly force was used, "[t]he 'most important' of these factors is 'whether the suspect posed an immediate threat to the safety of the officers or others.' " (*Napouk v. Las Vegas Metropolitan Police Department* (9th Cir. 2024) 123 F.4th 906, 915 (*Napouk*); see also *Tennessee v. Garner* (1985) 471 U.S. 1, 3.) Nevertheless, " 'there are no per se rules,' " and different or additional factors may be relevant in particular factual contexts. (*George v. Morris* (9th Cir. 2013) 736 F.3d 829, 838 & fn. 13 (*George*).)

"The reasonableness of an officer's conduct is determined in light of the totality of circumstances" (*Hayes, supra,* 57 Cal.4th at p. 629), and is " 'judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight' " (*id.* at p. 632; see also *Graham, supra,* 490 U.S. at

---

[4] Federal cases are "instructive in this area," and we rely upon them in our analysis. (*Brown, supra,* 171 Cal.App.4th at p. 527, fn. 11.)

pp. 396–397). That standard "reflects deference to the split-second decisions of an officer and recognizes that, unlike private citizens, officers may use deadly force." (*Lopez*, *supra*, 196 Cal.App.4th at p. 685; see *Martinez*, *supra*, 47 Cal.App.4th at p. 343.) Moreover, if an officer's conduct is reasonable, " 'there is no requirement that he or she choose the "most reasonable" action or the conduct that is the least likely to cause harm and at the same time the most likely to result in the successful apprehension of a violent suspect, in order to avoid liability . . . .' " (*Hayes*, at p. 632.)

### D. The Undisputed Facts Demonstrate Flores Ran Toward Officer Ruiz Armed With a Knife

The crux of Plaintiffs' appeal is their argument that the trial court erred by resolving a supposedly disputed issue of material fact: that at the time Officer Ruiz shot Flores, Flores was running toward him. The trial court did not err.

The officers uniformly testified Flores ran toward Officer Ruiz. The evidence upon which Plaintiffs primarily rely to support their position that Flores did not run toward Officer Ruiz are the videos of the shooting.

However, a review of all the videos in the record convinces us that they do not create a genuine dispute of material fact that Flores ran away from Officer Ruiz. Instead, a careful review of the videos, particularly from Officer Ruvalcaba's body worn camera, supports the officers' accounts. Although the video is obstructed at several critical moments by Officer Ruvalcaba's arm, one can see that during the standoff with Flores before Officer Ruiz fired his weapon, Officer Ruiz is moving laterally toward the center of the roadway. That is supported by the other videos of the incident. It is also consistent with Officer Ruiz's

11

deposition testimony that he initially moved laterally, toward the center of the roadway.[5] He also testified Flores was essentially mirroring his movements toward the center of the roadway. Thus, even if Flores ultimately ran diagonally, he was still running toward Officer Ruiz. Toward the end of the standoff and while he was shooting, Officer Ruiz took several steps backward and to the side, approaching the sidewalk and thus ending the confrontation closer to where he had been when it began.

Plaintiffs maintain that because Flores and Officer Ruiz began the encounter on the same north-south axis, and because Flores ran diagonally toward the center of the roadway, he necessarily ran away from Officer Ruiz. But that argument is premised on the unsupported assumption that Officer Ruiz remained stationary on that north-south axis during the standoff. The body camera video of the incident plainly shows he did not. Because Plaintiffs' speculative assumption has no factual basis and is blatantly contradicted by video of the incident, the trial court properly refused to credit it.[6] (*Scott, supra,* 550 U.S. at p. 380.)

---

[5]     Officer Ruiz's deposition contains some directional inconsistencies between west and east. During the standoff, with Flores standing to the north and Officer Ruiz south of him, the center of the street was east, while the curb and sidewalk were west. The body camera video plainly shows that before shots were fired, Officer Ruiz and Flores had both moved toward the center of the roadway, away from the curb and sidewalk. We therefore adopt the video's depiction of the direction of their movements. (See *Scott v. Harris* (2007) 550 U.S. 372, 381 (*Scott*).)

[6]     At oral argument, Plaintiffs' counsel argued the locations of two bullet holes (upper back and arm) indicated Flores was

12

Plaintiffs characterize the trial court as improperly weighing the evidence and resolving disputed issues of material fact in favor of Defendants. (See *Tolan v. Cotton* (2014) 572 U.S. 650, 657 (*per curiam*).) We do not agree. On this record, that Flores may have run diagonally supports the conclusion he ran toward Officer Ruiz, who had already moved in that direction, toward the center of the roadway.[7] The trial court correctly concluded Plaintiffs failed to show a " '*genuine* issue of *material* fact' " that Flores was not running toward Ruiz at the time of the shooting. (*Scott*, *supra*, 550 U.S. at p. 380.)

With the undisputed material facts established, we now consider whether the trial court properly determined Officer Ruiz's use of force was objectively reasonable in light of all the circumstances.

---

running away when he was shot. But the coroner expressed no opinion regarding the sequence in which the gunshots were fired, whether Flores was still moving at that time, or his position relative to the officers. Thus, the bullet hole locations do not create a genuine dispute of material fact that Flores ran away from Officer Ruiz.

[7] Plaintiffs also argue Flores's prior flights from the officers before the fatal confrontation demonstrate he was also attempting to flee when he was shot. But whereas his prior flight from the police took him northbound on Central Avenue, he was moving, at best, southeast when he was shot. We see no reason to credit Plaintiffs' speculative inference, particularly when the record shows Flores had a clear alternative path to continue his flight northbound on Central Avenue.

### E. On This Record, Officer Ruiz's Use of Force Was Objectively Reasonable as a Matter of Law

The trial court properly granted Defendants' motion for summary judgment because construing the evidence in the light most favorable to Plaintiffs, the record demonstrates Officer Ruiz's use of force was objectively reasonable as a matter of law.

As we have noted, the most important factor in determining the reasonableness of force "is 'whether the suspect posed an immediate threat to the safety of the officers or others.' " (*Napouk*, *supra*, 123 F.4th at p. 915.) That is the focus of the parties' briefing on appeal, and we likewise focus on that factor.[8] In light of the situation with which he was confronted, Officer Ruiz's belief that Flores was an immediate threat to him was objectively reasonable.

First, Officer Ruiz knew Flores was armed with a large knife. He saw it in Flores's hand. Earlier in the pursuit, Flores was concealing his hands in his waistband, which suggested to Officer Ruiz that Flores was attempting to conceal the knife. We recognize Flores's mere possession of a knife would not alone make him an immediate threat. (See, e.g., *S.B. v. County of San Diego* (9th Cir. 2017) 864 F.3d 1010, 1014 [jury could have found officers violated 4th Amend. by shooting kneeling suspect with knives in his pockets as soon as his hand touched a knife]; *George*, *supra*, 736 F.3d at p. 839 ["If the deputies indeed shot the sixty-four-year-old decedent without objective provocation while

---

[8] Nevertheless, we note the other two *Graham* factors appear to also weigh in favor of the reasonableness of Officer Ruiz's use of force. (See *Napouk¸ supra*, 123 F.4th at pp. 919–920; *Blanford v. Sacramento County* (9th Cir. 2005) 406 F.3d 1110, 1113 (*Blanford*).)

14

he used his walker, with his gun trained on the ground," jury could find a 4th Amend. violation]; *Glenn v. Washington County* (9th Cir. 2011) 673 F.3d 864, 872–874 [no immediate threat to officers where victim was armed with a three-inch pocket knife, he did not brandish it at anyone but held to his own neck, and he did not approach the officers]; *Harris v. Roderick* (9th Cir. 1997) 126 F.3d 1189, 1204 ["Law enforcement officials may not kill suspects who do not pose an immediate threat to their safety or to the safety of others simply because they are armed."]; *Munoz v. Olin* (1979) 24 Cal.3d 629, 635–636 [substantial evidence supported jury's negligence verdict against officers who shot fleeing arson suspect without warning or sirens, and who approached in an unmarked police car].)[9] But here, Flores's possession of a large knife was just one of several grounds supporting Officer Ruiz's reasonable belief he was a threat.

Second, Officer Ruiz knew from Sergeant Ibanez that Flores had been behaving erratically, "running up to people with [a] large knife." That peculiar behavior, combined with what Officer Ruiz had witnessed in Flores's repeated failures to heed officer commands and his repeated attempts to flee from them, gave Officer Ruiz cause to believe Flores posed a threat to him, his fellow officers, and anyone Flores encountered. (See *Napouk*, *supra*, 123 F.4th at p. 917; *Lal v. California* (9th Cir. 2014) 746 F.3d 1112, 1117 (*Lal*); *Blanford*, *supra*, 406 F.3d at p. 1116.) Moreover, the officers alerted Flores of the gravity of the situation and their perception he was a threat by warning him at

---

[9]     Plaintiffs' reliance on these cases is misplaced because we have already determined the undisputed evidence shows Flores ran toward Officer Ruiz with a large knife. As we explain below, that made him an immediate threat.

gunpoint they would shoot him if he continued to defy their commands. (See *Napouk*, at p. 918; cf. *Johnson v. Myers* (9th Cir. 2025) 129 F.4th 1189, 1194 [officers failed to warn suspect they would use deadly force].) Flores still did not comply.

Third, as we explained in part I.D., *ante*, the undisputed evidence demonstrates Flores ran toward Officer Ruiz with a large knife in hand, despite Officer Ruiz's repeated commands not to do so. When Officer Ruiz opened fire, Flores was running toward him with the large knife in his right hand, refusing to obey officer commands to stop. The evidence shows Officer Ruiz fired when Flores had come within 12 feet of him, and was rapidly coming closer. In light of all the circumstances known to Officer Ruiz, it was objectively reasonable for him to believe Flores was intent on attacking him with the knife. (See *Lal*, *supra*, 746 F.3d at p. 1117.) California law did not bar Officer Ruiz from protecting himself. (See *City and County of San Francisco, Calif. v. Sheehan* (2015) 575 U.S. 600, 613 (*Sheehan*) [4th Amend.]; see also *Napouk, supra*, 123 F.4th at p. 918.)

We reject Plaintiffs' analogy to *Vos v. City of Newport Beach* (9th Cir. 2018) 892 F.3d 1024 (*Vos*). In addition to the fact that two of the *Graham* factors did not weigh in favor of the officers there (*Vos,* at p. 1031), that court also determined "that a reasonable jury could conclude that Vos was not an immediate threat to the officers" (*id.,* at p. 1032). In *Vos*, the police had assumed covered defensive positions outside a 7-Eleven store, outnumbered the suspect eight to one, did not believe he had a gun (they thought he had scissors), and could have used less-lethal alternatives. (*Id.* at pp. 1029–1032.) The suspect "had not . . . endangered himself or the 7-Eleven patrons," and he was

16

alone inside the store with little opportunity to escape and harm others. (*Id.* at p. 1033.)

By contrast, here Officer Ruiz and the other officers had not established defensive cover, Flores was in a busy area with many innocent members of the public,[10] he had repeatedly evaded police and repeatedly refused to comply with their commands, and he was wielding a large knife in a menacing fashion as he charged toward Officer Ruiz, ultimately coming within 12 feet of him, and coming closer. In light of those material differences, *Vos* does not persuade us that Officer Ruiz's use of force was unreasonable.

Considering all the circumstances, Officer Ruiz's use of deadly force in shooting Flores–while tragic–was objectively reasonable.

## F. The Officers' Preshooting Conduct Does Not Alter the Conclusion That Officer Ruiz's Use of Force Was Objectively Reasonable

Plaintiffs further argue that even if Flores was running toward Officer Ruiz, the shooting was unreasonable because of other circumstances, including the preshooting conduct of the officers. Plaintiffs do not articulate how that argument bears upon their specific causes of action, but even assuming it applies to all of them, we reject it.

First, we reject Plaintiffs' suggestion that the trial court determined that Flores's orientation toward Officer Ruiz was entirely dispositive of the reasonableness of force inquiry. On the contrary, the court's order explains that Officer Ruiz's actions were objectively reasonable because "Flores ignored officer warnings; . . . ran in Ruiz's general direction with a large knife

---

[10]    See *Scott, supra,* 550 U.S. at pages 383 through 384.

17

positioned under his arm as though ready for imminent attack; and Ruiz fired at Flores until he was on the ground and immobile." Moreover, the court quoted the correct legal principles governing an unreasonable force analysis, including that it " 'requires careful attention to the facts and circumstances of each particular case.' " (See *Graham, supra,* 490 U.S. at p. 396.) Although the court's order was succinct, it correctly identified the relevant law and appropriately applied that law to the record before it.

Second, we acknowledge the preshooting conduct of law enforcement personnel can be relevant to the reasonableness of force inquiry "to the extent it shows, as part of the totality of circumstances, that the shooting itself was negligent." (*Hayes, supra*, 57 Cal.4th at p. 631; see also *Tabares v. City of Huntington Beach* (9th Cir. 2021) 988 F.3d 1119, 1125 (*Tabares*).) Nevertheless, the officers' preshooting conduct here does not alter our conclusion that Officer Ruiz's use of force was objectively reasonable.

Plaintiffs argue the officers' actions before the shooting preclude summary judgment because Sergeant Ibanez should have told his fellow officers that Flores "was intoxicated or mentally ill," and the officers should have planned to use less-lethal force and deescalate the encounter with Flores. However, Plaintiffs presented no evidence the officers' conduct violated any police procedures or practices. (Cf. *Grudt v. City of Los Angeles* (1970) 2 Cal.3d 575, 587–588 [police firearm policy was relevant evidence of negligence]; *Tabares, supra*, 988 F.3d at pp. 1127–1128 [expert testimony indicated officer failed to follow police procedure].)

Moreover, the officers' preshooting conduct was reasonable in light of the rapidly evolving situation they confronted. At the outset, they spent about two minutes trying to locate Sergeant Ibanez to assist him. They then had approximately one minute in the patrol car together while actively searching the vicinity for Flores. When they did locate Flores, Officer Ruiz quickly concluded he was probably under the influence of narcotics. (See *Blanford*, *supra*, 406 F.3d at p. 1117.) They had a less-lethal alternative option in Officer Ruvalcaba's taser (that was deployed but ultimately was ineffective), and when they located Flores, they made some attempts to deescalate the situation.[11] Nevertheless, Flores charged toward Officer Ruiz with a knife in hand less than 30 seconds after Officer Ruiz exited the patrol vehicle.

Nothing in this record creates a genuine dispute of material fact that the officers' preshooting conduct was negligent or otherwise rendered Officer Ruiz's use of force unreasonable. (See

---

[11] We reject Plaintiffs' suggestion at oral argument the officers' conduct was unreasonable because they could have prioritized using a taser. "[O]fficers 'need not avail themselves of the least intrusive mean of responding to an exigent situation; they need only act within that range of conduct [that is] reasonable.' " (*Napouk*, *supra*, 123 F.4th at p. 921; see also *Hayes*, *supra*, 57 Cal.4th at p. 632 ["Law enforcement personnel have a degree of discretion as to how they choose to address a particular situation."].) This was not a case, as in *Vos*, where the police had significant downtime to discuss how to approach a suspect who had barricaded himself inside a store, but a pursuit on foot on a public street with a suspect who had just turned to face and charge Officer Ruiz. As we have explained, the officers' conduct was reasonable in light of the circumstances they confronted.

*Hayes*, *supra*, 57 Cal.4th at p. 632; see also *Sheehan*, *supra*, 575 U.S. at p. 612.) Plaintiffs' speculation that the officers' preshooting conduct was inappropriate has no evidentiary support and does not show " 'a triable issue of material fact' " regarding the reasonableness of Ruiz's later use of force. (*Aguilar*, *supra*, 25 Cal.4th at p. 849.)

## DISPOSITION

The trial court's judgment is affirmed. Costs are awarded to Defendants. (See Cal. Rules of Court, rule 8.278(a)(1)–(2).)


RICHARDSON, J.


WE CONCUR:


LUI, P. J.


ASHMANN-GERST, J.